IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| FRANCISCO FRANSON and JORDON TOPINIO, <br><br> Plaintiff, <br><br> vs. <br><br> CITY AND COUNTY OF HONOLULU; VINCENT MORRE; NELSON TAMAYORI; JOSEPH BECERA; and LOUIS M. KEALOHA, <br><br> Defendants. | CIVIL NO. 16-00096 DKW-KSC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COMPLAINT** |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT CITY AND COUNTY OF HONOLULU'S
MOTION TO DISMISS COMPLAINT**

**INTRODUCTION**

On September 5, 2014, Francisco Franson and Jordon Topinio were assaulted, allegedly without cause, by Honolulu Police Officer ("HPD") Vincent Morre at a game room, while he and HPD Officers Nelson Tamayori and Joseph Becera were on duty. Plaintiffs allege that the assault, a post-assault cover-up, and unspecified HPD policies were unlawful. They bring claims against the three HPD Officers, HPD Chief Louis Kealoha, and the City and County of Honolulu ("City") for violations of state and federal law. Because Plaintiffs' 42 U.S.C. § 1983 municipal

liability and negligent training and/or supervision claims against the City are conclusory and lack factual specificity, they are deficient as currently alleged. Accordingly, the City's motion to dismiss is GRANTED in part with leave to amend, as set forth more fully below.   The motion is DENIED to the extent the City seeks dismissal of Plaintiffs' negligence-based claims as a matter of law.

## BACKGROUND

### I.   September 5, 2014 Incident

According to Plaintiffs, while on duty on September 5, 2014, HPD Officers Morre, Becera, and Tamayori demanded entry and gained access to a game room located on Hopaka Street in search of a fugitive.   Plaintiffs were patrons of the game room and were seated next to each other in front of gaming machines when the three officers entered.   Complaint ¶¶ 13-15.

Plaintiffs allege that Morre approached Topinio and ordered him to remove his hat.   Topinio complied, but Morre kicked Topinio in the face, unprovoked. Morre then continued his search of the game room and returned to the area where Plaintiffs were seated.   Complaint ¶¶ 16-17.   The Complaint alleges that, again without provocation, Morre "punched, kicked, and struck" Franson, "then proceeded to again intentionally kick Topinio and threw a chair/stool striking Mr. Topinio in the head."   Complaint ¶ 18.   Tamayori and Becera allegedly witnessed

2

Morre assault Plaintiffs, but failed or refused to intervene.   Complaint ¶ 19.   The three HPD Officers thereafter left the game room together.

Franson and Topinio contend that Morre, Tamayori, and Becera agreed to and purposely omitted the assault from their subsequent reports of the incident in an attempt to conceal it.   Moreover, Becera allegedly made materially false statements to "law enforcement that he did not witness Defendant Morre strike Mr. Topinio" in order to conceal the assault.   Complaint ¶¶ 21-22.   Plaintiffs allege that all three HPD Officers were members of the HPD Crime Reduction Unit, *see* Complaint ¶ 12, and aver as follows with respect to the City's liability:

> 23.    Plaintiffs are informed and believe and do thereupon allege that the Honolulu Police Department has a custom, policy, practice, and/or usage of condoning and/or ratifying the use of excessive force and/or conditions amounting to severe punishment by Honolulu Police Department officers, including but not limited to officers with the Honolulu Police Department Crime Reduction Unit.

> 24.    Plaintiffs did not at any time provoke, invite, consent to, or otherwise allow or permit Defendants to utilize excessive and/or unnecessary force or to expose them to conditions amounting to severe punishment.

> 25.    Plaintiffs are informed and believe and do thereupon allege that the actions of Defendants were without reasonable, just, and/or probable cause.

> 26.    As a direct and proximate result of the foregoing, Plaintiffs suffered the deprivation of their freedom, liberties,

profits, and/or consequential damages in amounts to be proven at trial.

. . . .

28.    In committing the above acts and omissions, Defendants acted maliciously, knowingly, intentionally, recklessly, willfully, deliberately, and/or without regard for the rights, interests, and well-being of Plaintiffs, and without reasonable, just, and/or probable cause.

Complaint ¶¶ 23-28.

## II.    <u>Plaintiffs' Claims</u>

Plaintiffs filed suit against the City, the Defendant HPD Officers in their individual capacities (Complaint ¶¶ 6-8), and Chief Kealoha in both his official and individual capacities (Complaint ¶¶ 9-10, 41).   The Complaint alleges the following causes of action: (1) a Section 1983 claim against the City and Kealoha based upon excessive use of force, seizure, and severe punishment in violation of the Fourth and Fourteenth Amendments, and the Constitution and laws of the State of Hawaii (Count I); (2) a negligent training and/or supervision claim against the City and Kealoha (Count II); (3) an assault and battery claim against Morre (Count III); (4) a negligence claim against Defendant HPD Officers based upon conduct during the execution of an arrest warrant in the game room (Count IV); (5) a negligent infliction of emotional distress ("NIED") claim against all Defendants (Count V);

4

(6) an intentional infliction of emotional distress claim ("IIED") claim against

Defendant HPD Officers (Count VI); (7) a *respondeat superior* claim against the

City based upon the tortious conduct of Morre occurring within the scope of his

employment (Count VII); (8) a civil conspiracy claim against Defendant HPD

Officers (Count VIII); and (9) a claim for punitive damages against Defendant HPD

Officers (Count IX).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for

failure to state a claim upon which relief can be granted.   Pursuant to *Ashcroft v.

Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   555

U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570

(2007)).   "[T]he tenet that a court must accept as true all of the allegations contained

in a complaint is inapplicable to legal conclusions."   *Id.*   Accordingly,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555).

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged."   *Id.* (citing *Twombly*, 550 U.S. at 556).   Factual

allegations that only permit the court to infer "the mere possibility of misconduct" do not constitute a short and plain statement of the claim showing that the pleader is entitled to relief as required by Rule 8(a)(2).   *Id*. at 679.

## **DISCUSSION**

The City moves to dismiss the claims against itself and Kealoha in his official and individual capacities.[1]   Becera filed a joinder to the City's motion.   For the following reasons, the City's motion is GRANTED with Plaintiffs permitted leave to amend the following claims: Count I (Section 1983 claim based on violation of the Fourth Amendment); Count II (negligent supervision/training); and all claims against Kealoha in his individual capacity.

The following claims are DISMISSED without leave to amend: Count I (Section 1983 violation based upon violation of the 14th Amendment and the Hawaii Constitution), Count IX (punitive damages as a stand-alone claim), and all claims against Kealoha in his official capacity.

## **I.**     **Section 1983 Claims Against the City (Count I)**

---

[1] In its reply, the City clarifies that the instant motion seeks dismissal of all claims against itself and Kealoha.   "Count III (Assault and Battery), Count IV (Negligence), Count VI (Intentional Infliction of Emotional Distress), Count VIII (Civil Conspiracy), and Count IX (Punitive Damages) are not alleged as against the City or Kealoha, and thus the instant Motion does not address such Counts."   Reply at 11.   Where the City and Kealoha raise arguments relating to these claims, the Court addresses them to the extent necessary.

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Plaintiffs allege that their rights were violated under the Fourth and Fourteenth Amendments to the United States Constitution, and civil liberties protected by the Hawaii State Constitution.   *See* Complaint ¶¶ 31-35.   As a preliminary matter, the Court appropriately narrows the scope of Plaintiffs' Section 1983 claim by identifying the proper federal right allegedly violated.

## A.    <u>Hawaii State Constitutional Claim Is Dismissed With Prejudice</u>

Section 1983 is a vehicle for redress of violations of federal law.   A claim for violation of state law is not cognizable under the statute.   *Cornejo v. County of San Diego*, 504 F.3d 853, 855 n.3 (9th Cir. 2007).   Despite their Complaint, Plaintiffs acknowledge that they are not pursuing a Section 1983 claim against the City based upon violation of state law.   *See* Mem. in Opp. at 8.   Accordingly, the City's motion is GRANTED with respect to this issue.

7

**B.** **Fourteenth Amendment Claims Are Dismissed With Prejudice**

Plaintiffs appear to allege excessive force claims under the Fourteenth Amendment's substantive due process prong. "In addressing an excessive force claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed [upon] by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The validity of the claim must then be determined by reference to the constitutional standard which governs the right, rather than to a more generalized excessive force standard. *Id*.; *compare Tennessee v. Garner*, 471 U.S. 1 (1985) (applying the Fourth Amendment standard to a claim of excessive force to effect an arrest), *with Whitley v. Albers*, 475 U.S. 312 (1986) (applying the Eighth Amendment standard to a claim of excessive force to subdue a convicted prisoner), *with White v. Roper*, 901 F.2d 1501, 1507 (9th Cir. 1990) (applying the Fourteenth Amendment's Substantive Due Process standard to a claim of excessive force against a pretrial detainee). The custodial status of the victim determines the applicable constitutional amendment. *See Graham*, 490 U.S. at 393-94.

Although the Complaint makes conclusory statements that Plaintiffs are "pretrial detainees" (Complaint ¶¶ 32, 33, 34), there are no factual assertions to support such statements, which are plainly inconsistent with oral argument and with

the statements in the Complaint that Plaintiffs were unrestrained patrons at a game room when the alleged assault occurred.   That is, there are no allegations that Plaintiffs were arrested, detained, held without charges, charged, indicted, tried, or that they otherwise had the custodial status of "pretrial detainees" at any time such that the Fourteenth Amendment might apply.   In fact, Plaintiffs made no such contention in their opposition to the motion.   Accordingly, the City's motion is GRANTED on this issue.

### C.   Municipal Liability Claims for Violation of Fourth Amendment

The Court next turns to Plaintiffs' Section 1983 Fourth Amendment excessive force claims against the City.[2]   The Complaint alleges, in relevant part:

> 32.    The policy of condoning, ratifying, and/or failing to prevent the excessive and/or unnecessary use of force . . . by Honolulu Police Officers is [a] constitutionally deficient custom, policy, practice, and/or usage that repudiates [the] constitutional rights of persons such as Plaintiffs and there is a direct causal connection between the custom, policy, practice, and/or usage and these constitutional deprivations

--------

[2]The Fourth Amendment prohibits the use of "excessive force" arising out of an arrest or investigatory search or stop.   *See Graham v. Connor*, 490 U.S. 386, 395 (1989).   Fourth Amendment excessive force claims are evaluated under a "reasonableness" standard, in which the "nature and quality of the intrusion on the individual's Fourth Amendment interests" must be balanced "against the countervailing governmental interests at stake."   *Id.* at 396.   To state a claim for excessive force, a plaintiff must allege facts to support that an official used or caused to be used objectively unreasonable force against him.   *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004).

33.    As the Chief of Police, Defendant Kealoha's failure to train, supervise, and/or discipline Honolulu Police Department members that use excessive force . . . demonstrates that he personally implemented, maintained, enforced, and/or allowed the continued use of excessive force . . . , acted with reckless and callous indifference, and knew of an/or acquiesced to such unconstitutional conduct.

34.    Defendant Kealoha's supervision, training, implementation, maintenance, enforcement, acquiescence, and/or allowance of the continued operation of the use of excessive force or the exposure of citizens and/or pretrial detainees to conditions amounting to severe punishment amounts to deliberate indifference to the right of persons who are victims of excessive police force . . . because the custom, policy and/or practice is obviously deficient, likely to cause the violation of citizens' constitutional rights, and closely related to Plaintiffs' injuries.

Complaint ¶¶ 32-34.

A plaintiff may establish municipal liability under Section 1983, as recognized in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), by showing at least one of the following:

(1) conduct pursuant to an official policy inflicted the injury; (2) the constitutional tort was the result of a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (4) an official with final policy-making authority "delegated that authority to, or ratified the decision of, a subordinate."

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

The City moves to dismiss Plaintiffs' *Monell* claim on the basis that Plaintiffs fail to sufficiently allege (1) an official policy or custom; (2) any omission or failure that amounts to a policy of deliberate indifference; or (3) ratification.   The Court agrees and dismisses each theory of municipal liability, but grants Plaintiffs leave to amend.

### i.     No Official Policy or Custom Is Sufficiently Alleged

For the City to be liable under Section 1983, Plaintiffs must establish that an HPD policy, custom, or practice was the "moving force" behind the alleged violation of their Fourth Amendment rights.   *Monell*, 436 U.S. at 694 (1978).

Plaintiffs argue in opposition that their Section 1983 claim "specifically pleads all elements of a 42 U.S.C. § 1983 claim."   Mem. in Opp. at 5.   While their Complaint certainly pleads the elements of a Section 1983 claim, the Complaint fails to plead *facts* in support of the conclusory allegations that "the Honolulu Police Department has a custom, policy, practice, and/or usage of condoning/and or ratifying the use of excessive force . . . by Honolulu Policy Department Officers, including but not limited [to] officers with the Honolulu Police Department Crime Reduction Unit."   Complaint ¶ 23; *see also* Mem. in Opp. at 4 ("[T]he Honolulu Police Department established, manages, organizes, and supports the Crime Reduction Unit (CRU).").   The bare allegation that the HPD established and

11

manages the CRU does not sufficiently state a plausible Section 1983 municipal policy or custom claim for excessive force. *See, e.g., AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (applying *Iqbal* standard to *Monell* claims); *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

To be clear, the Complaint does not (1) identify an actual policy, custom, or practice; (2) explain how this policy, custom, or practice violates Plaintiffs' Fourth Amendment rights; or (3) explain how the policy, custom, or practice was the moving force behind the violations. *See Starr*, 652 F.3d at 1216 (stating that the pleading "must plausibly suggest an entitlement to relief, such that it is not unfair to require [Defendants] be subjected to the expense of discovery and continued litigation"); *Costales v. City & Cnty. of Honolulu*, 2012 WL 4863786, at *5 (D. Haw. Oct. 12, 2012) ("Although in the past, the Ninth Circuit 'has not required parties to provide much detail at the pleading stage regarding the "policy or custom" alleged,' it has since made clear that the plausibility requirements of *Iqbal* apply with equal force to these claims.") (citing *Fisher v. Kealoha*, 869 F.Supp.2d 1203, 2012 WL 1379320, at *6 (D. Haw. Apr. 19, 2012)).   Accordingly, Plaintiffs fail to

state a *Monell* claim based on an official custom or policy.   The claim is dismissed

with leave to amend.

### ii.   No Conduct that Amounts to a Policy or Custom of Deliberate Indifference Is Sufficiently Alleged

The City next moves to dismiss Plaintiffs' *Monell* claims that are based on an

omission or failure that amounts to a policy or custom of deliberate indifference.

Plaintiffs maintain that the City has a policy of "condoning" the "use of

excessive violence" by the Crime Reduction Unit.   *See* Mem. in Opp. at 4-5.

Plaintiffs also assert that the City's failure to train or supervise "amounts to

deliberate indifference to the constitutional rights of the persons with whom its

police officers are likely to come into contact."   Mem. in Opp. at 6.

These largely conclusory allegations fall far short of alleging any "informal

policy" or "widespread practice" sufficient to survive the instant motion.   *See*

*Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011).   Liability may

only be imposed for failure to train when that failure "reflects a 'deliberate' or

'conscious' choice by a municipality."   *City of Canton v. Harris*, 489 U.S. 378, 389

(1989).   Further, failure to train claims "can only yield liability against a

municipality where that city's failure to train reflects deliberate indifference to the

constitutional rights of its inhabitants."   *Id.* at 392.   Given these restrictions, a

13

plaintiff seeking to impose municipal liability for failure to train must show: "(1) [A]n inadequate training program, (2) deliberate indifference on the part of the [municipality] in adequately training its law enforcement officers, and (3) [that] the inadequate training 'actually caused' a deprivation of [a plaintiff's] constitutional rights."  *Merritt v. County of L.A.*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (setting forth a similar three-prong test) (citation omitted); *Wereb v. Maui Cnty.*, 727 F. Supp. 2d 898, 921 (D. Haw. 2010).

Municipal liability may be imposed when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Canton*, 489 U.S. at 390; *see also Bd. of County Comm'rs v. Brown,* 520 U.S. 397, 407-09 (1997) (explaining that deliberate indifference may be shown through a "pattern of tortious conduct by inadequately trained employees" or where "a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations").

In light of these standards, Plaintiffs' *Monell* claims, based on omissions and actions that evidence a conscious choice, or deliberate indifference, by the City is

14

insufficiently alleged.   Plaintiffs once again do little more than parrot the basic

elements of a *Monell* claim, devoid of any factual enhancement (*e.g.* that any

policymaker had actual or constructive notice that its officer training or supervision

was deficient).   The claim is dismissed with leave to amend.

### iii.   Ratification is Not Sufficiently Alleged

With respect to the third theory of *Monell* liability – ratification – Plaintiffs

argue in their opposition that their allegations against Chief Kealoha satisfy the

requirement that an official with "final policy-making authority" ratified the

unconstitutional action of a subordinate.   Mem. in Opp. at 7.   The allegations in the

Complaint, however, do nothing of the sort.

Plaintiffs "must show the decision was the product of a conscious, affirmative

choice to ratify the conduct in question.   Such a ratification 'could be tantamount to

the announcement or confirmation of a policy for purposes of *Monell*.'"   *Edenfield

v. Estate of Willets*, 2006 WL 1041724, at *16 (D. Haw. Apr. 14, 2006) (quoting

*Haugen v. Brosseau*, 339 F.3d 857, 875 (9th Cir. 2003), *reversed on other grounds

by Brosseau v. Haugen*, 543 U.S. 194 (2004) (per curiam)).   *See also Christie v.

Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (ratification requires proof of a

policymaker's knowledge of the alleged constitutional violation); *Trevino v. Gates*,

99 F.3d 911, 920 (9th Cir. 1996) (ratification requires an adoption and express

approval of the acts of others who caused the constitutional violation); *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992) (an official policymaker must "make a deliberate choice from among various alternatives to follow a particular course of action").

Here, there is no evidence that Chief Kealoha deliberately chose to "endorse" any individual officer's conduct and the basis for it, which must occur "before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Gillette*, 979 F.2d at 1348. A mere failure "to overrule the unconstitutional discretionary acts of subordinates[,]" without expressly endorsing or approving of the conduct, is an insufficient predicate for the imposition of liability against the municipality. *Id.* There must exist "something more" than naked allegations "that a policymaker concluded that the defendant officer's actions were in keeping with the applicable policies and procedures." *Garcia v. City of Imperial*, 2010 WL 3911457, at *2 (S.D. Cal. 2010) (citing *Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Haw. 2003) and *Larez v. City of Los Angeles*, 946 F.2d 630, 646-48 (9th Cir. 1991)).

Plaintiffs state for the first time in their opposition that the City has a "policy and practice of deputizing the CRU, and ignor[ing] the hundreds of complaints of violence over the years, [which] is a policy which stops with the Police Chief" that

"[h]e alone could have changed."   Mem. in Opp. at 7.   While even these new

allegations may be insufficient, it is clear that the allegations in the Complaint

contain no facts demonstrating that Chief Kealoha expressly endorsed or approved

of the alleged conduct engaged in by the Defendant Officers.   *See Garcia*, 2010 WL

3911457, at *2.   Accordingly, the ratification claim is dismissed with leave to

amend.

### iv.   Summary of Section 1983 Claims Against the City

The City is entitled to dismissal of each of Plaintiffs' Section 1983 municipal

liability claims.   Because amendment, however, may be possible, Plaintiffs are

GRANTED leave to amend Count I to state a *Monell* claim consistent with this

order.

## II.   Negligent Training/Supervision (Count II)

The City moves to dismiss Count II, asserting that it fails to allege the basic

elements of a negligent training and/or supervision claim.

Count II alleges:

> 37.   Plaintiffs are informed and believe and thereupon allege
> that Defendants Kealoha and City and County of Honolulu
> negligently failed and refused to proper[l]y adopt and/or enforce
> policies, train, supervise[], and/or discipline the Defendant
> Officers when they acted outside of the scope of their
> employment to improperly and illegally assault Plaintiffs and
> expose them to conditions amounting to severe punishment.

. . . .

39.    Defendants Kealoha and City and County of Honolulu should have been aware of and taken appropriate action, including but not limited to train and/or supervise Defendant Officers and/or other officers with the Honolulu Police Department Crime Reduction Unit who have been involved in prior incidents in which they were accused of using excessive force.

40.    Defendants Kealoha and City and County of Honolulu failed in supervising, training, hiring and/or failing to discipline the Defendant Officers because Defendants Kealoha and City and County of Honolulu knew or should have known about the necessity and opportunity to exercise control and to curtail the continued operation and use or excessive and/or unnecessary use of force[.]

Complaint 37-40.

These are conclusory statements at their best.   The Complaint fails to identify a specific training program, a deficiency in the program, or any facts describing how the deficiency is related to the injuries alleged.   Nor do Plaintiffs plead facts identifying how the City failed in its supervision, or identifying any acts in which discipline was necessary, but not taken.   All told, Plaintiffs' allegations are not supported by relevant factual allegations, but simply recite the elements of the claim and state a legal conclusion.   A claim for relief requires factual content that makes

liability plausible – Plaintiffs' "formulaic recitations of the elements of a cause of action" are insufficient.   *Twombly*, 550 U.S. at 555.

Beyond the factual deficiencies, the City points to the Complaint's failure to allege that the City knew or should have known of the opportunity or need for exercising control (*e.g.* foreseeability).   Where an employer has not been put on notice of the necessity for exercising a greater degree of control or supervision over a particular employee, the employer cannot be held liable as a matter of law.   *See Otani v. City & Cnty. of Hawaiʻi*, 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998).

Plaintiffs fail to state a viable claim for negligent training and/or supervision against the City, and Count II is dismissed with leave to amend.

## III.   <u>Negligence-Based Claims</u>

The City argues it is entitled to dismissal of Plaintiff's negligence-based claims based on the conditional privilege defense.   Under Hawaiʻi law, non-judicial government officials have a qualified or conditional privilege with respect to tortious actions taken in the performance of their public duties.   *Towse v. State of Hawaii*, 64 Haw. 624, 631, 647 P.2d 696, 702 (1982)); *see also Medeiros v. Kondo*, 55 Haw. 499, 504, 522 P.2d 1269, 1272 (1974).   The City relies on *Bartolome v. Kashimoto*, 2009 WL 1956278, at *2 (D. Haw. June 26, 2009), for the proposition that Plaintiffs can defeat a conditional privilege defense only upon a showing of

malice, which is incompatible with a negligence claim.   *Bartolome* held that "[t]he level of intent required to demonstrate malice removes the alleged injurious action from the realm of negligence into that of intentionally tortious conduct," and therefore concluded that "when 'actual malice' must be shown, a non-judicial official's qualified privilege provides complete immunity from negligence claims." 2009 WL 1956278, at *2

At this early stage of the proceedings, and mindful that Plaintiffs have been granted leave to amend, the Court cannot find that all negligence-based claims fail as a matter of law.   Courts within this district have recognized, in the context of excessive force cases, that the "higher burden of proof with respect to malice does not necessarily preclude a claim based on negligence."   *Morgan v. Cnty. of Hawai'i*, 2016 WL 1254222, at *21 (D. Haw. Mar. 29, 2016); *see also Long v. Yomes*, 2011 WL 4412847, at *7 (D. Haw. Sept. 20, 2011) ("[C]onduct performed with 'reckless disregard of the law or of a person's legal rights' may be negligent, even though negligent conduct often does not involve malice.") (citations omitted).

As the district court observed in *Long*:

> While the requirement that plaintiffs show actual malice to overcome the "qualified or conditional privilege" is a significant obstacle, it does not preclude negligence liability in all cases.   In particular, conduct performed with "reckless disregard of the law or of a person's legal rights" may be negligent, even though

negligent conduct often does not involve malice. *See Bright v. Quinn*, 20 Haw. 504 (1911) (affirming an award of punitive damages in a negligence action because the evidence supported "[a] finding that the defendant operated his automobile on the occasion in question with a reckless indifference to the rights of the plaintiff or of any others who might be on the street-car"); *see also Onnette v. Reed*, 832 S.W.2d 450, 454 (Tex. Crim. App. 1992) (holding that a negligence claim overcame pleas of quasi-judicial immunity because the appellant referred to the defendants' conduct "as 'grossly negligent,' 'heedless,' as demonstrating 'callous indifference' and 'reckless disregard,' and in other similarly negative terms"). Indeed, numerous cases in this district have considered negligence claims in the context of the "qualified or conditional privilege." *See, e.g., Thourot*, 2011 WL 2746334, at *8 (allowing a negligence claim against police officers to survive Rule 12(b)(6) dismissal because the plaintiff alleged that the officers acted with malice); *Castro v. Melchor*, 760 F. Supp. 2d 970, 996-98 (D. Haw. 2010) (allowing a negligence claim against prison guards to survive summary judgment because there were genuine disputes of material fact as to whether the guards acted with malice); *Kealoha v. Dep't of Pub*. Safety, Civ. No. 05-00009 ACK-KSC, 2007 WL 1303021, at *9 (D. Haw. May 2, 2007) (noting that the court previously "held that a genuine issue of fact as to whether Sgt. Fields acted with malice precluded it from determining whether Sgt. Fields [was] entitled to qualified immunity as to the negligence claim"); *see also Ogden ex rel. Estate of Ogden v. County of Maui*, 554 F. Supp. 2d 1141, 1153 (D. Haw. 2008) (dismissing on summary judgment a similar negligence claim because the plaintiff did not address malice and the facts did not support an inference of malice).

Accordingly, the Court finds that the "qualified or conditional privilege" does not bar Long's third cause of action as a matter of law.

2011 WL 4412847, at *7-8 (footnotes omitted)

Likewise, the Court here declines to find at this preliminary stage that the "qualified or conditional privilege" bars Plaintiffs' negligence causes of action as a matter of law.   Accordingly, the motion is denied on this issue.

## IV.   **Claims Against Kealoha**

### A.   **Individual-Capacity Claims**

Kealoha moves to dismiss the Section 1983 claim against him in his individual capacity.   The Complaint lacks allegations that Kealoha personally participated in the alleged constitutional violations or that he set in motion a series of acts by others.   *See* Complaint ¶¶ 10, 33-34.   Supervisory liability under Section 1983 requires a showing of either (1) personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.   *See Starr*, 652 F.3d at 1207; *see also id.* ("[P]laintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates.").

The requisite causal connection can be established by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury.   *Dubner v. City & Cnty. of San Francisco*,

22

266 F.3d 959, 968 (9th Cir. 2001); *see also Watkins v. City of Oakland*, 145 F.3d

1087, 1093 (9th Cir. 1998) ("A supervisor can be liable in his individual capacity for

his own culpable action or inaction in the training, supervision, or control of his

subordinates; for his acquiescence in the constitutional deprivation; or for conduct

that showed a reckless or callous indifference to the rights of others.").

Plaintiffs, however, allege no facts illustrating that Kealoha personally

participated in the claimed constitutional deprivations, that he was the moving force

behind those deprivations, or that he otherwise knowingly acquiesced in the conduct

by the Defendant Officers.   The Count I Section 1983 claim is accordingly

dismissed against Kealoha in his individual capacity with leave to amend.

## B.   <u>Official-Capacity Claims</u>

The claims brought against Kealoha in his official capacity are redundant

because the City is also a named defendant.   It is well-established that "[t]here is no

longer a need to bring official-capacity actions against local government officials,

for . . . local government units can be sued directly for damages and injunctive or

declaratory relief."   *Graham*, 473 U.S. at 167 n.14 (1985); *see also Monell*, 436

U.S. at 690 n.55 (1978) (noting that "official capacity suits generally represent only

another way of pleading an action against an entity of which an officer is an agent.").

As such, the official-capacity claims duplicate the claims asserted against the City

and are therefore dismissed without leave to amend.   *See Wong v. City & Cnty. of Honolulu*, 333 F. Supp. 2d 942, 947 (D. Haw. 2004).

## V.   **Count IX (Punitive Damages)**

A request for punitive damages is not a stand-alone claim, but rather derivative of Plaintiffs' other claims.   *See Kang v. Harrington*, 59 Haw. 652, 660, 587 P.2d 285, 291 (1978) ("An award of punitive damages is purely incidental to the cause of action.").   To the extent Plaintiffs seek punitive damages as a stand-alone claim (Count IX), the Count is dismissed.   Moreover, punitive damages are not available against the City with respect to the Section 1983 claim.   *See Graham*, 473 U.S. at 167 n.13 (1985) (Although Section 1983 does not permit punitive damages against a municipality, punitive damages are available against an official individually.).   The motion is therefore granted as to Count IX.

## CONCLUSION

For the foregoing reasons, the City's motion to dismiss is GRANTED in part and Plaintiffs are GRANTED leave to file an amended complaint by **August 22,**

**2016**, consistent with the terms of this order.   The motion is DENIED to the extent the City seeks dismissal of Plaintiffs' negligence-based claims as a matter of law.

IT IS SO ORDERED.

DATED: July 26, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Franson, et al. v City & County of Honolulu et al*., Civ. No. 16-00096 DKW-KSC;
**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISMISS COMPLAINT**