IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| FRANCISCO FRANSON and JORDON TOPINIO, | ) CIVIL NO. CV16-00096 DKW/KSC |
| Plaintiffs, | ) <br> ) MEMORANDUM IN SUPPORT OF <br> ) MOTION |
| vs. | ) <br> ) |
| CITY AND COUNTY OF HONOLULU; VINCENT MORRE; NELSON TAMAYORI; JOSEPH BECERA, | ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

**MEMORANDUM IN SUPPORT OF MOTION**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION ................................................................................2

STANDARD FOR DISQUALIFICATION ...........................................2

ARGUMENT ......................................................................................3

I.    The City Has Standing to Bring the Instant Motion and this Court is Also Entitled to Act *Sua Sponte* to Disqualify Breiner ...................................3

II.   Mr. Breiner Has a Concurrent Conflict of Interest in Representing the Serhant Plaintiffs Here and Chief Kealoha in the Criminal Case .................5

    A.   There is Direct Adversity In the Instant Case .......................................5

    B.   Assuming *Arguendo* that There is No Direct Adversity, There is a Concurrent Conflict of Interest Due to Material Limitation .............8

III.  Mr. Breiner Should Be Disqualified For the Independent Reasons That He Did Not Receive Informed Consent from Chief Kealoha and Serhant Plaintiffs, and the Conflict is Not Waivable ...................................10

    A.   The Credibility of Chief Kealoha and the Constitutionality and Implementation of HPD Policies Are at Issue in Both the Civil and Criminal Cases ............................................................................13

    B.   Chief Kealoha's Interests Could Adversely Affect Franson Plaintiffs' Interests, or Vice Versa .....................................................20

    C.   Issues of Confidentiality Make It Such That a Belief that Mr. Breiner Would Be Able to Provide Competent and Diligent Representation Would Not Be a Reasonable One..............................23

    D.   Breiner Cannot Reasonably Obtain Informed Consent from Chief Kealoha Because Mr. Breiner Representing Kealoha in the Criminal Case Would Likely Constitute Ineffective Assistance of Counsel ...................................................................24

IV.   Events that Have Occurred Since Judge Gililmor's Order to Show Cause Have Not "Cured" Mr. Breiner's Conflict.........................................25

V.    Conclusion ...................................................................................30

i

# TABLE OF AUTHORITIES

**Page**

## *Cases*

Allen v. Iranon,
  99 F. Supp.2d 1216 (D. Haw. 1999) ...................................................................17

Banning Ranch Conservancy v. Superior Court,
  193 Cal. App. 4th 903 (2011) ...........................................................................7

Buehler v. Sbardellati,
  34 Cal. App. 4th 1527 (1995) .........................................................................11

Christian v. Waialua Agric. Co.,
  30 Haw. 533 (1928) .........................................................................................28

Cohen v. Strouch,
  Civ. No. 10-07828 DLC, 2011 WL 1143067 (S.D.N.Y. March 24, 2011) .........20

Decaview Distrib. Co. v. Decaview Asia Corp.,
  2000 LEXIS 16534 (N.D. Cal. 2000) .................................................................3

Erickson v. Newmar Corp.,
  87 F.3d 298 (9th Cir. 1996) ...............................................................................4

Flatt v. Superior Court,
  885 P.2d 950 (Cal. 1994) .................................................................................11

Flying J. Inc. v. TA Operating Corp.,
  2008 WL 648545 (D. Utah March. 10, 2008) ..................................................27

FMC Techs., Inc. v. Edwards,
  420 F. Supp.2d 1153 (W.D. Wash. 2006) ..........................................................2

Forrest v. Baeza,
  58 Cal. App. 4th 65 (1997) ..............................................................................11

Fragiao v. State,
  95 Haw. 9, 18 P.3d 871 (2001) ........................................................................25

Frias Holding Co. v. Greenberg Traurig, LLP,
  Civ. No. CV2:11-00160 GMN-VCF, 2012 WL 4490855 (D. Nev. 2012) ..........14

Gas-A-Tron of Ariz. v. Union Oil Co.,
  534 F.2d 1322 (9th Cir. 1996) ...........................................................................4

In re Greco,
  46 B.R. 280 (Bankr. D. Haw. 1984) .................................................................27

In re Pioneer Mill,
  33 Haw. 305 (1935) .........................................................................................28

Kang v. Harrington,
  59 Hawai'i 652, 587 P.2d 285 (1978) ...............................................................16

Kentucky v. Graham,
  473 U.S. 159 (1985) .........................................................................................29

Monell v. Dep't of Soc. Servs.,
    436 U.S. 658 (1978)...........................................................................29
O'Connor v. Jones,
    946 F.2d 1395 (8th Cir. 1991) ...........................................................4
Otani v. City & County of,
    Honolulu, 126 F. Supp.2d 1299 ........................................................17
Paul E. Iaocono Structural Engineer, Inc. v. Humphrey,
    722 F.2d 435 (9th Cir. 1983) .............................................................2
People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,
    20 Cal. 4th 1135 (1999) ....................................................................4
People v. Peoples,
    51 Cal. App. 4th 1592 (1997) ............................................................4
Rodriguez v. W. Publ'g Corp.,
    563 F.3d 948 (9th Cir. 2009) .............................................................2
Schnider v. Providence Health & Servs.,
    2016 U.S. Dist. LEXIS 3775 (Alaska 2016) ......................................4
State v. Mark,
    123 Haw. 205, 231 P.3d 478 (2010)..................................................25
Truck Ins. Exch. v. Fireman's Fund Ins. Co.,
    6 Cal. App. 4th 1050 (1992) .........................................................7, 28
White v. Experian Information Solutions,
    993 F. Supp.2d 1154 (2014) .............................................................27
Wong v. City & Cnty. of Honolulu,
    333 F.Supp.2d 942 (D. Hawaii 2004)................................................29
Wong v. Fong,
    60 Haw. 601, 593 P.2d 386 (1979) ...................................................11

***Statutes***
42 U.S.C. § 1983 ....................................................................................17

***Rules***
Federal Rule of Evidence 609................................................................8
Hawaii Rule of Professional Conduct 1.0.............................................11
Hawaii Rule of Professional Conduct 1.1.............................................12
Hawaii Rule of Professional Conduct 1.3.............................................12
Hawaii Rule of Professional Conduct 1.6........................................ 23, 24
Hawaii Rule of Professional Conduct 1.7................................. 3, 5, 7, 9, 10, 12, 27
Hawaii Rule of Professional Conduct 1.16............................................3
Local Rule 83.1 ...................................................................................3, 6
Local Rule 83.3 ....................................................................................2

## INTRODUCTION

Defendant City and County of Honolulu ("City")[1] respectfully requests that

this Court disqualify attorney Myles Breiner ("Breiner"), attorney for Plaintiffs

Francisco Franson and Jordon Topinio ("Franson Plaintiffs") from the instant case

due to a non-waivable conflict of interest.

## **STANDARD FOR DISQUALIFICATION**

In deciding whether to disqualify counsel, the Court looks to the local rules

regulating the conduct of the members of its bar.  See Paul E. Iaocono Structural

Engineer, Inc. v. Humphrey, 722 F.2d 435, 439 (9th Cir. 1983); FMC Techs., Inc.

v. Edwards, 420 F. Supp.2d 1153, 1157 (W.D. Wash. 2006); Rodriguez v. W.

Publ'g Corp., 563 F.3d 948, 967 (9th Cir. 2009).  Rule 83.3 of the Local Rules of

---

[1] The Department of the Corporation Counsel ("COR") represents the City and County of Honolulu ("City") in the instant action, and is still attorney of record for Chief Louis M. Kealoha ("Chief Kealoha") in the instant action.  However, on August 17, 2016, Chief Kealoha informed COR, through Kevin Sumida ("Mr. Sumida"), his attorney in the case Kealoha et al. v. Charles Totto et al., Civ. No. 16-1-1166-6 ("Totto lawsuit"), that he does not consent to COR's continued representation of him in any civil matter, including this one.  See Declaration of Curtis E. Sherwood, at ¶3.  The conflict of interest that COR asked whether Chief Kealoha would consent to arose as a result of Chief Kealoha and his wife suing the City in the Totto lawsuit.  See id.  After being informed that Chief Kealoha would not consent to waiver of the conflict of interest, COR has begun the process of hiring special counsel to represent Chief Kealoha in the civil cases in which he is currently a named defendant.  See Declaration of Curtis E. Sherwood, ¶4.  However, the issue of representation of Chief Kealoha in the instant case is moot because, as discussed below, Franson Plaintiffs filed a First Amended Complaint that omits Chief Kealoha as a defendant, and, consequently, Chief Kealoha is not otherwise a party in the instant case.  See Declaration of Curtis E. Sherwood, ¶5.

Practice For the United States District Court For the District of Hawaii ("LR")

states that, "[e]very member of the bar of this court and any attorney permitted to

practice in this court pursuant to LR 83.1(d) or (e) shall be governed by and shall

observe the standards of professional and ethical conduct required of members of

the Hawaii State Bar."

Under the Hawaiʻi Rules of Professional Conduct ("HRPC"), a lawyer is

required to withdraw from representation of a client if the representation either

would result in a violation of the HRPC or other law. See HRPC Rule 1.16.

According to the HRPC, a concurrent conflict of interest exists if (1) the

representation of one client will be directly adverse to another client, or if (2) there

is a significant risk that the representation of one or more clients will be materially

limited by the lawyer's responsibilities to another client, a former client, or a third

person, or by a personal interest of the lawyer.  See HRPC 1.7(a).

## ARGUMENT

I.      The City Has Standing to Bring the Instant Motion and this Court is Also
        Entitled to Act *Sua Sponte* to Disqualify Breiner

Non-clients have standing to file a motion to disqualify opposing counsel

based upon a conflict of interest where the attorney's involvement threatens the

party's right to a just determination of its claims to a degree sufficient to constitute

an injury in fact.  See Decaview Distrib. Co. v. Decaview Asia Corp., 2000 LEXIS

16534 (N.D. Cal. 2000).  As demonstrated below, the City's fears with respect to

-3-

the conflict are concrete, particularized, actual, or imminent, and the City has standing in this instant matter.  See Schnider v. Providence Health & Servs., 2016 U.S. Dist. LEXIS 3775 (Alaska 2016).

Moreover, not only does the City have standing to bring this motion, but this Court also has the inherent power to *sua sponte* disqualify Mr. Breiner based on the information available before it.  "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'"  People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc., 20 Cal. 4th 1135, 1145 (1999).  "[A] court may disqualify an attorney for not only acting improperly but also for failing to avoid the appearance of impropriety."  Erickson v. Newmar Corp., 87 F.3d 298, 303 (9th Cir. 1996)(quoting Gas-A-Tron of Ariz. v. Union Oil Co., 534 F.2d 1322, 1324-25 (9th Cir. 1996)).  "[W]here counsel is in violation of professional ethics, the court may act on motion of an aggrieved party or may act *sua sponte* to disqualify."  O'Connor v. Jones, 946 F.2d 1395, 1399 (8th Cir. 1991); see also People v. Peoples, 51 Cal. App. 4th 1592 (1997) (finding a trial court's *sua sponte* recusal of an attorney representing her brother in an assault case against attorney's former husband was proper given the significant conflict of interest and the court's duty to maintain the integrity of the

judicial process.)

II.   <u>Mr. Breiner Has a Concurrent Conflict of Interest in Representing the Franson Plaintiffs Here and Chief Kealoha in the Criminal Case</u>

As mentioned above, a concurrent conflict of interest exists if (1) the representation of one client will be directly adverse to another client, or if (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer.  <u>See</u> HRPC 1.7(a).

In the instant case, there is a concurrent conflict of interest under both prongs of HRPC Rule 1.7(a).

A.   <u>There Is Direct Adversity in the Instant Case</u>

It is clear that an attorney-client relationship exists between Mr. Breiner and Louis M. Kealoha ("Chief Kealoha").  On July 20th, 2016, Mr. Breiner filed a motion to dismiss the federal prosecutor from the grand jury investigation on behalf of Chief Kealoha and his wife. <u>See</u> KHON2 Online Article entitled "Kealohas file motion to dismiss federal prosecutor from grand jury investigation" <u>http://khon2.com/2016/07/21/kealohas-file-motion-to-dismiss-federal-prosecutor-from-grand-jury-investigation/</u>, attached hereto as Exhibit "A"; <u>see also</u> "Kealoha's 'Bizarre' Legal Strategy: Filing Lawsuits And Going Public," attached hereto as Exhibit "B".  Mr. Breiner continues to publicly hold himself out as the Kealohas' attorney in the criminal matter.  <u>See</u> KHON2 Online Article entitled "Newest

police commissioner calls out colleagues, urges investigation into chief", published on August 3, 2016, http://khon2.com/2016/08/03/city-council-confirms-sheehans-appointment-to-honolulu-police-commission/, attached hereto as Exhibit "C"; see also Exhibit "B".

There is solid evidence indicating that Mr. Breiner does in fact represent Chief Kealoha[2].  Furthermore, even if Mr. Breiner does not currently represent Chief Kealoha, this does not change the fact that an attorney-client relationship exists or existed concurrently with his representation of Franson Plaintiffs in the instant case, as well as plaintiffs in the cases Kaahu et al. v. City & Cnty. of Honolulu et al., Civ. No. 14-00266 HG-RLP ("Kaahu lawsuit") and Daphne S. Dinnan et al. v. et al. v. City & Cnty. of Honolulu et al., Civ. No. 14-00286 DKW RLP ("Dinnan lawsuit"). Mr. Breiner has consistently and publicly held himself out as attorney for the Kealohas, and Mr. Breiner has in fact filed a motion in federal court on behalf of the Kealohas seeking to remove a special prosecutor.

---

[2] Mr. Breiner submitted nearly identical memorandum under seal in the instant case, as well as the case Kaahu et al. v. City & Cnty. of Honolulu, et al., Civ. No. 14-00266 HG-RLP.  In Kaahu, Judge Helen Gillmor denied Mr. Breiner's ex parte motion to file memorandum under seal on the basis that the documents requested for filing under seal do not contain attorney-client privileged information.  See Minute Order, attached as Exhibit "D".  On August 22, 2016, this Court ordered Mr. Breiner to file a redacted copy of the sealed Memorandum of Law filed on August 5, 2016 as Dkt. No. 38 in accordance with LR 83.12(c) no later than September 1, 2016.  See ECF No. 42.  Mr. Breiner filed a redacted copy of the sealed Memorandum of Law on August 22, 2016.  See ECF No. 43.  The documents therein clearly indicate that Mr. Breiner and Chief Kealoha have an attorney-client relationship.

Because Chief Kealoha is Mr. Breiner's client in a federal criminal case, and because Mr. Breiner is representing Franson Plaintiffs in the instant case, who sued the City as well as Chief Kealoha in both his official and individual capacities, Mr. Breiner has or had a concurrent conflict of interest due to direct adversity as defined by HRPC 1.7(a).  <u>See</u> HRPC 1.7 Comment 6 ("[A]bsent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated.")  "Loyalty to a current client prohibits undertaking representation directly adverse to that client without the client's consent after consultation."  <u>See id.</u>  Concerns with respect to concurrent representation include the need to assure the attorney's undivided loyalty and commitment to the client.  <u>Truck Ins. Exch. v. Fireman's Fund Ins. Co.</u>, 6 Cal. App. 4th 1050, 1056 (1992); <u>see also</u> <u>Banning Ranch Conservancy v. Superior Court</u>, 193 Cal. App. 4th 903, 912 (2011) ("The prohibition against simultaneous representations of adverse clients has been analogized to the biblical injunction against serving two masters.").

Direct adversity will also arise in the instant case if Mr. Breiner were to cross-examine Chief Kealoha at trial or question Chief Kealoha in a deposition. <u>See</u> HRPC 1.7 Comment 6 ("Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who

is represented in the lawsuit.").  Although the City would likely dispute Plaintiffs'

ability to depose Chief Kealoha here, the Court could choose to allow it.

Should such testimony occur, the conflict of interest would only be

exacerbated as it would then be in the interest of the Franson Plaintiffs for Chief

Kealoha to be convicted in the criminal matter—particularly if such conviction

were a felony or involve a truth-related offense—as such could be used to impeach

Chief Kealoha in the instant case.  See F.R.E. 609.  Moreover, even if Mr. Breiner

were unable or otherwise chose not to depose or question Chief Kealoha, the City

may want or need to depose or question him in order to support its defense.  Mr.

Breiner's duty of loyalty, and his duty to provide Franson Plaintiffs with competent

and zealous representation, would likely require Mr. Breiner to attempt to admit

any relevant conviction in the civil trial, even though Mr. Breiner would have

previously fought the same conviction in the criminal case.  Thus, it is clear that

there is direct adversity arising from Mr. Breiner's simultaneous representation of

Chief Kealoha in the criminal case, and the plaintiffs in the Franson lawsuit.  This

conflict will only grow more serious as the two cases progress.

### B.   Assuming _Arguendo_ that There is No Direct Adversity, There is a Concurrent Conflict of Interest Due To Material Limitation

Another reason why disqualification is warranted here is because there is a

concurrent conflict of interest, due to the significant risk in this case that the

representation of one or more clients will be materially limited by the lawyer's

responsibilities to another client, a former client, or a third person. <u>See</u> HRPC Rule 1.7. "Even where there is no direct adversity of interest, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend, or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities and interests." <u>See</u> HRPC Rule 1.7, Comment 8. The concern is that "[t]he conflict [of interest] forecloses alternatives that would otherwise be available to the client." <u>See id.</u> "The critical questions are the likelihood that a difference in interest will arise and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." <u>See id.</u>

First, as discussed in further detail below with respect to the non-waivability of the instant conflict, the loyalty of Mr. Breiner to Chief Kealoha will likely cause Mr. Breiner either to not pursue certain arguments on behalf of Franson Plaintiffs that may impugn Chief Kealoha, or to fail to either depose or call Chief Kealoha as a witness in the trial altogether. In fact, Mr. Breiner has already amended Franson Plaintiffs' Complaint in order to eliminate Chief Kealoha as a defendant altogether. <u>See</u> ECF No. 39.

Second, also discussed in further detail below, if Mr. Breiner receives any confidential information from Chief Kealoha in the course of the criminal

representation that may bear on the issues raised in the instant case of the constitutionality of HPD's customs or policies, training, or supervision, the representation of Franson Plaintiffs will be materially limited in that Mr. Breiner could not within the bounds of ethical rules provide such confidential information to Franson Plaintiffs.

III.   <u>Mr. Breiner Should Be Disqualified For the Independent Reasons That He Did Not Receive Informed Consent from Chief Kealoha and Franson Plaintiffs, and the Conflict is Not Waivable</u>

In spite of the identified conflict of interest, the HRPC would still allow Mr. Breiner to represent Chief Kealoha and the Franson Plaintiffs in the instant case only if (1) he reasonably believed that he would be able to provide competent and diligent representation to each affected client, (2) the representation was not prohibited by law, (3) the representation did not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal, and (4) each affected client gave consent after consultation, confirmed in writing.  <u>See</u> HRPC 1.7.

In the instant case, representation is prohibited for the independent reasons that: (1) informed consent was not provided and confirmed in writing, and (2) even if such informed consent was provided, Mr. Breiner could not <u>reasonably</u> believe that he would be able to provide competent and diligent representation to both Chief Kealoha and Franson Plaintiffs.  <u>See</u> <u>id.</u>

First, because Mr. Breiner attempted to represent an interest adverse to Franson Plaintiffs and Chief Kealoha without the informed waiver by both sets of clients, he should be disqualified.   See Wong v. Fong, 60 Haw. 601, 604, 593 P.2d 386, 389 (1979) (citations omitted) (where the relationship between an attorney and his client is an active and existing one, adverse representation is prima facie improper); see also Buehler v. Sbardellati, 34 Cal. App. 4th 1527, 1537 (1995), as modified (June 19, 1995) (applying a "per se" disqualification rule application to an attorney attempting to represent an interest adverse to a current client without that client's approval); Flatt v. Superior Court, 885 P.2d 950, 956 (Cal. 1994); Forrest v. Baeza, 58 Cal. App. 4th 65, 74 (1997).

In the instant case, there is no indication that Mr. Breiner obtained the informed consent of Chief Kealoha, or Franson Plaintiffs.   See ECF No. 38; Comment 18 ("Valid consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client."). "Consultation" is defined as "communication of information reasonably sufficient to permit the client to appreciate the significance of the matter in question."   See HRPC Rule 1.0(c).   "The information required depends on the nature of the conflict and the nature of the risks involved."   See HRPC Rule 1.7, Comment 18. "The process of obtaining valid consent in some instances will require a

recommendation to consult independent counsel." See id. "Under some circumstances it may be impossible to make the disclosure necessary to obtain consent." See id. In the instant case, the City believes that it would have been impossible for Mr. Breiner to make the disclosure necessary for him to obtain informed consent from Franson Plaintiffs and/or Chief Kealoha, or in the alternative, the information provided to Chief Kealoha and/or Franson Plaintiffs was insufficient to constitute informed consent.

Second, assuming *arguendo* that Mr. Breiner had obtained the informed consent of both sets of clients, because a reasonable attorney would not believe Mr. Breiner, under the circumstances of this case, could provide competent and diligent representation to Chief Kealoha and Franson Plaintiffs, the conflict cannot be consented to.

HRPC Rule 1.7 Comment 15 states:

> The question of whether a perceived conflict of interest can reasonably be consented to is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their consent, after consultation, to representation burdened by a conflict of interest. Under paragraph (b)(1), the representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation. See Rule 1.1 (competence) and Rule 1.3 (diligence) of these Rules. When a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent. Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation. In litigation, a court may

-12-

raise the question when there is reason to infer that the lawyer has neglected the responsibility. In a criminal case, inquiry by the court is generally required when a lawyer represents multiple defendants. Where the conflict is such that it clearly calls into question the fair or efficient administration of justice, opposing counsel may properly raise the question.   Such an objection should be viewed with caution, however, for it can be misused as a technique of harassment.[3]

(emphasis added).

For the following reasons, it is clear that a disinterested lawyer would conclude that Chief Kealoha and/or the Franson Plaintiffs could not reasonably agree to representation by Mr. Breiner if they were properly informed of the circumstances.

A.   The Credibility of Chief Kealoha and the Constitutionality and Implementation of HPD Policies Are at Issue in Both the Civil and Criminal Cases

The conflict of interest identified here was not waivable because it was not reasonable to believe that Mr. Breiner could provide competent and diligent

---

[3] Any allegation that the City's Motion is being used for the purpose of harassment would be unfounded.  The conflict of interest issue that is the subject of this Motion was raised by Judge Helen Gillmor on August 1, 2016.  See Order to Show Cause in Kaahu, attached as Exhibit "E".   The City provided a similar analysis to Judge Gillmor pursuant to her Order to Show Cause, and could not have argued in good faith that Mr. Breiner should not be disqualified due to conflict of interest.  The reasons for disqualification in the instant case are nearly identical. Not only is the conflict of interest in Mr. Breiner representing Chief Kealoha and Franson Plaintiffs non-consentable, as discussed below, the City is legitimately concerned that Mr. Breiner has or may obtain inside or confidential information from Chief Kealoha that he will in turn use in current and future cases against the City.

representation to clients in different matters that required him to establish the client's good character in one matter, where the litigation strategy with respect to the other matter involved attacking that same client's credibility. See Frias Holding Co. v. Greenberg Traurig, LLP, Civ. No. 2:11-CV-160-GMN-VCF, 2012 WL 4490855, at *6-7 (D. Nev. Sept. 27, 2012).

Mr. Breiner was required to establish Chief Kealoha's good character and credibility with respect to the matter in which he was retained by Chief Kealoha. See "Police chief's attorney: Feds 'on an expedition' to indict someone", published on May 12, 2016, http://khon2.com/2016/05/12/police-chiefs-attorney-feds-on-an-expedition-to-indict-someone/, attached hereto as Exhibit "F", p. 4, ¶ 6 (*quoting* Mr. Breiner as stating, "…the notion that the police commission or the mayor's office would ask for the resignation of Chief Kealoha is simply wrong.  He's done an excellent job. The commission has given him high marks.  There's no evidence of any internal corruption by Chief Kealoha.  To suggest that he should step down is completely inappropriate.")  However, at the same time, he has been attacking Chief Kealoha's credibility and character in several civil cases.  In the Kaahu lawsuit, Mr. Breiner filed a Complaint on behalf of the Kaahu Plaintiffs alleging that:

> 92. As the Chief of Police Defendant Kealoha's failure to train supervise, and/or discipline Honolulu Police Department members that use excessive force and/or expose arrestees to conditions amounting to punishment demonstrates that he personally implemented, maintained,

-14-

enforced, and/or allowed the continued use of excessive force and/or exposure of pretrial detainees to conditions amounting to severe punishment, acted with reckless and callous indifference, and knew of an acquiesced to such unconstitutional conduct.

93. Defendant Kealoha's supervision, training, implementation, maintenance, enforcement, acquiescence and/or allowance of the continued operation of the use of excessive force or the exposure of arrestees to conditions amounting to severe punishment amounts to deliberate indifference to the rights of persons who are victims of excessive police force and/or suffer conditions amounting to punishment because the custom, usage, police, and/or practice is obviously deficient, likely to cause the violation of citizens' constitutional rights, and closely related to the injuries suffered Plaintiffs.

\*     \*     \*

97. Plaintiffs are informed, believe and thereupon allege that Defendant Kealoha, Defendant HPD and Defendant C&CH negligently failed and refused to properly adopt and enforce policies, train, supervise, and/or discipline the Officer Defendants when they acted outside of the scope of their employment to improperly and illegally assault Plaintiff Jonah and/or expose him to conditions amounting to severe punishment, thereby proximately causing the aforementioned injuries.

98. Defendant Kealoha, Defendant HPD and Defendant C&CH failed in supervising, training, hiring, and failing to discipline the Officer Defendants because Defendant Kealoha, Defendant HPD and the Defendant C&CH knew or should have known about the necessity and opportunity to exercise control and to curtail the continued operation and use of the excessive and/or unnecessary use of force and the exposure of arrestees to conditions amounting to severe punishment.

\*     \*     \*

99. Defendant Kealoha acted with malice.

See Exhibit "G", ¶¶92-93, 97, 98 (Emphasis added).

In the Kaahu lawsuit, Plaintiffs sought punitive damages against all

Defendants, including Chief Kealoha, in their individual capacities. See Exhibit

"G", at p. 21.  In Hawai'i, punitive damages may be awarded only in cases where

the wrongdoer has acted wantonly, oppressively, or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been such willful misconduct or entire want of care as would raise presumption of conscious indifference to consequences.  <u>Kang v. Harrington</u>, 59 Hawaiʻi 652, 660-661, 587 P.2d 285, 293 (1978).  Mr. Breiner argued that "[t]he Complaint clearly pleads for such punitive damages against the Chief, so striking this Defendant as a matter of law is not appropriate."  <u>See</u> Exhibit "H", at 5.  Mr. Breiner further argued that:

> Plaintiffs agree with Defendants that a showing of "deliberate indifference" by the Chief could subject to him such liability. (Motion at 12).  Plaintiffs can demonstrate that the problems of excessive force, and the deliberate indifference of management are standard operating procedure at HPD.  HPD had prior complaints from the public about [the subject HPD officer's] propensity for violence, but HPD deliberately "squashed" them, and the Chief again took no action.

<u>See</u> Exhibit "H", at 6.

Mr. Breiner argued that "this pattern of summarily dismissing citizen and even other officer complaints is part of the policy and practice of condoning excessive force, and that the Chief 'knew or should have known the necessity and opportunity for exercising such control.'"  <u>See</u> Exhibit "H," at 7. Mr. Breiner argued that the <u>Kaahu</u> Complaint names the Chief of Police as the "final policy making official," and that Plaintiffs have demonstrated that his subordinates pro-actively "squash" reports of excessive force and submit false

testimony to the Court, and thus the question of "deliberate indifference" and whether punitive damages apply to Chief Kealoha are questions for the jury. <u>See</u> Exhibit "H", at 11.

It should be noted that in order for Chief Kealoha to be found liable in his individual capacity pursuant to 42 U.S.C. § 1983, the Kaahu Plaintiffs would have to demonstrate that Chief Kealoha was either personally involved in the constitutional deprivation, or he must have set in motion a series of acts by others which he knew or should reasonably know could cause others to inflict the constitutional injury.  <u>See</u> <u>Allen v. Iranon</u>, 99 F. Supp.2d 1216, 1237 (D. Haw. 1999)(citations and quotation marks omitted).  Mr. Breiner has already made the argument in the <u>Kaahu</u> case with respect to Chief Kealoha's personal involvement that:

> The appropriate legal standard to hold the Chief accountable is "deliberately indifferent to the need."  Otani v. City & County of Honolulu, 126 F. Supp.2d 1299 at 1304), and <u>Plaintiffs can meet this standard by demonstrating the higher rank one goes to, the more their reports concerning excessive violence are deceptive</u>.

<u>See</u> Exhibit "H", at 4.

In the instant case, Mr. Breiner has argued that: "The [officer defendants], members of the Honolulu Police Department's (HPD) Crime Reduction Unit (CRU), are a notoriously violent group of thugs who masquerade as police officers. Deputizing this roaming posses has been a long-standing practice of HPD, which

started and stops with the Chief of Police." <u>See</u> ECF No. 23, Exhibit "I", at p.2.

Mr. Breiner further argued that "[t]he policy and practice of deputizing the CRU,

and ignore the hundreds of complaints of violence over the years is a policy which

stops with the Police Chief.  He alone could have changed this." <u>See id.</u> at p.12.

With respect to Franson Plaintiffs' ratification claim, Mr. Breiner argued that

allegations in the original complaint were sufficient to satisfy the "final policy-

making authority" pleading requirement, and that "<u>[t]he Complaint clearly pleads</u>

<u>that the constitutional tort was committed by the Police Chief</u>." <u>See</u> ECF No. 23,

Exhibit "I", at p. 12 (emphasis added).  Further, Mr. Breiner had argued that

whether punitive damages apply to Chief Kealoha is a question of fact.  <u>See</u>

Exhibit "I", at 12.

In the Complaint in the <u>Dinnan</u> lawsuit, Mr. Breiner makes essentially the

same arguments and allegations on behalf of Shardeah K.K.K. Serhant,

individually and as parent and next friend of her minor children ("Serhant

Plaintiffs") that the he is making on behalf of the plaintiffs in <u>Kaahu</u> and the instant

case.  For example, Serhant Plaintiffs allege that:

> 107.  The constitutional violations committed by Officer Matsumoto were
> the result of Defendant <u>City's deliberate and longstanding practice, custom,</u>
> <u>policy, and/or procedure of failing to consider and apply the proper method</u>
> <u>and level of force to use and of failing to assess whether an emergency</u>
> <u>situation exists to justify the forcible seizure under the law</u>.
> 108.  <u>Such failure amounted to a deliberate indifference</u> to the constitutional
> rights of individuals who are detained for questioning but are not under
> arrest.

109.   Such customs, policies, and procedures were made in deliberate indifference to the constitutional rights of such persons.

110.   Officer Matsumoto followed said practice, custom, policy, and/or procedure when he failed, neglected, and/or refused to consider Dinnan's physical condition and circumstances in determining the proper method and level of force to use on Dinnan and failed to assess whether an emergency situation exists to justify the forcible seizure under law.

111.   As a result of Defendant City's policy, procedures, and customs, Officer Matsumoto illegally seized Dinnan and used excessive force in violation of the Fourth and Fourteenth Amendments, thereby causing his death.

112.   As a result of Defendant City's failure to train Officer Matsumoto, excessive force in violation of the Fourth and Fourteenth Amendments was used upon Dinnan, thereby causing his death.

113.   As a result of Defendant City's policy, procedures, and customs, and as a result of its failure to train its police officers, Officer Matsumoto used excessive force in violation of the Fourth and Fourteenth Amendments, thereby causing Dinnan's death.

114.   As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs have sustained substantial damages, including, but not limited to, loss of life, loss of lifetime earnings, loss of companionship, loss of companionship [sic], love, and support, loss of a lifetime of expected support, economic loss, medical bills, funeral expenses, and out-of-pocket expenses, and therefore entitled to recover special general, and compensatory damages in such amounts as shall be shown at a trial or hearing hereof.

See Dinnan Complaint, attached hereto as Exhibit "J", at ¶107-114.

Thus, in the instant case as well as in Dinnan and Kaahu, the plaintiffs are arguing that the City has unconstitutional customs and policies regarding excessive force, seizure, and inadequate supervision and training. Based on the above, and particularly the conflicting positions Mr. Breiner has taken with respect to Chief Kealoha regarding not only his truthfulness, but his role in training, supervision, and implementation of HPD policies, it is apparent that a reasonable disinterested

attorney would conclude that neither Chief Kealoha nor the Franson Plaintiffs

could reasonably consent under the circumstances.

   B.  Chief Kealoha's Interests Could Adversely Affect Franson
       Plaintiffs' Interests, or Vice Versa

   When one party's interest could adversely affect the other's interests, a court

may conclude that a belief that the attorney would be able to provide competent

and diligent representation to each affected client would not be a reasonable one.

Cohen v. Strouch, No. 10 CIV. 7828 DLC, 2011 WL 1143067, at *5 (S.D.N.Y.

March 24, 2011).

   It is in the best interests of Chief Kealoha to demonstrate both in the

criminal matter and the civil cases that (1) he did not violate others' civil rights, (2)

he did not abuse his powers, and (3) his management of HPD has not been

deliberately indifferent to constitutional rights.  On the other hand, it is in the best

interests of Franson Plaintiffs to demonstrate the exact opposite, that Chief

Kealoha did violate others' civil rights, he did abuse his police powers, and his

actions were deliberately indifferent to individuals' constitutional rights.  It is in

the best interests of Chief Kealoha for him to be deemed credible by the trier of

fact in both the criminal case and civil cases.  It is in the best interests of the

Franson Plaintiffs for Chief Kealoha to be deemed untruthful or insincere by the

trier of fact in the instant case.  The credibility of Chief Kealoha and HPD Policies

may be instrumental in the potential criminal case against Kealoha and in the

instant case.  Similarly, Chief Kealoha's credibility and HPD policies are at issue in the Dinnan and Kaahu cases, as well as in the instant case.

Furthermore, it is reasonable to believe that Mr. Breiner's loyalty to Chief Kealoha that is essential with respect to his representation of Chief Kealoha in the criminal case may adversely affect Franson Plaintiffs if Mr. Breiner were to either (1) fail to make certain arguments in this case that would impugn Chief Kealoha, or (2) argue less effectively or zealously out of loyalty to Chief Kealoha.  As mentioned above, there is evidence that Mr. Breiner has already failed to make certain arguments and/or has failed to zealously represent Franson Plaintiffs when he amended Franson Plaintiffs' Complaint to omit all claims against Chief Kealoha in both his official and individual capacities.  See ECF No. 39.

Thus, the First Amended Complaint ("FAC") omits, *inter alia*, the following allegations made against Chief Kealoha that were made in the Original Complaint:

10.   Defendant Kealoha is responsible for the instruction, training, and supervision of the Honolulu Police Department's officers and/or members.

\*        \*        \*

33.  As the Chief of Police, Defendant Kealoha's failure to train, supervise, and/or discipline Honolulu Police Department members that use excessive force and/or expose citizens and/or pretrial detainees to conditions amounting to punishment demonstrates that he personally implemented, maintained, enforced, and/or allowed the continued use of excessive force and/or exposure of citizens and/or pretrial detainees to conditions amounting to severe punishment, acted with reckless and callous indifference, and knew of and/or acquiesced to such unconstitutional conduct.

34.       Defendant Kealoha's supervision, training, implementation, maintenance, enforcement, acquiescence, and/or allowance of the continued operation of the use of excessive force or the exposure of citizens and/or

pretrial detainees to conditions amounting to severe punishment amounts to deliberate indifference to the rights of persons who are victims of excessive police force and/or suffer conditions amounting to punishment because the custom, policy, and/or practice is obviously deficient, likely to cause the violation of citizens' constitutional rights, and closely related to Plaintiffs' injuries.

                 \*     \*     \*

37.  Plaintiffs are informed and believe and thereupon allege that Defendants Kealoha and City and County of Honolulu negligently failed and refused to property [sic] adopt and/or enforce policies, train, supervised, and/or discipline the Defendant Officers when they acted outside of the scope of their employment to improperly and illegally assault Plaintiffs and expose them to conditions amounting to severe punishment.

                 \*     \*     \*

39.  Defendants Kealoha and City and County of Honolulu should have been aware of and taken appropriate action, including but not limited to train and/or supervise Defendant Officers and/or other officers with the Honolulu Police Department Crime Reduction Unit who have been involved in prior incidents in which they were accused of using excessive force.

40.  Defendants Kealoha and City and County of Honolulu failed in supervising, training, hiring and/or failing to discipline the Defendant Officers because Defendants Kealoha and City and County of Honolulu knew or should have known about the necessity and opportunity to exercise control and to curtail the continued operation and use of excessive and/or unnecessary use of force and the exposure of citizens and/or pretrial detainees to conditions amounting to severe punishment.

41.  Defendant Kealoha acted with malice.

See ECF No. 1, at ¶¶10, 33, 34, 37, 39, 40, 41.

Thus, assuming that the factual allegations made in the Complaint and pleadings had evidentiary support, or for those contentions specifically identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery,[4] Franson Plaintiffs have given up claims against Chief

---

[4] See Federal Rules of Civil Procedure ("FRCP") Rule 11.

Kealoha, the possibility of recovering punitive damages against him, and a central theme, if not the theory of their case.

C. Issues of Confidentiality Make It Such That a Belief that Mr. Breiner Would Be Able to Provide Competent and Diligent Representation Would Not Be a Reasonable One

Mr. Breiner has access to confidential information provided by Chief Kealoha in connection with his representation of Chief Kealoha in the criminal case. The Chief has institutional knowledge concerning HPD's policies and procedures, as well as information regarding the customs and policies pertaining to supervision, training, and discipline, excessive force, and seizure of individuals. These same issues are essential to and disputed in Mr. Breiner's civil cases against the City and Chief Kealoha. Because Mr. Breiner cannot disclose any such confidential information he obtained from representing Chief Kealoha in the criminal case to Franson Plaintiffs in the instant case, Mr. Breiner cannot reasonably obtain informed consent from Franson Plaintiffs. Under HRPC Rule 1.6, lawyers are prohibited from revealing confidential information relating to the representation of a client unless the client consents after consultation, the disclosure is impliedly authorized in order to carry out the representation, or under specific circumstances not implicated here. See HRPC Rule 1.6. The principle of client-lawyer confidentiality is given effect by related bodies of law: the client-lawyer privilege, the work-product doctrine, and the rule of confidentiality

established in professional ethics.  See HRPC Rule 1.6, Comment 3.  The

confidentiality rule applies not only to matters communicated in confidence by the

client but also to all information relating to the representation, whatever its source.

See HRPC Rule 1.6, Comment 3. A lawyer is prohibited from disclosing not only

information that itself reveals protected information, but also information that

could reasonably lead to the discovery of such information by a third person.  See

HRPC Rule 1.6, Comment 4.

Moreover, the City, separate and apart from Chief Kealoha, has an important

interest in preventing confidential information provided from Chief Kealoha from

being used by Mr. Breiner in one of the many civil cases Mr. Breiner has or will

bring against the City.  Given the City's inability to determine what Chief Kealoha

is providing to Mr. Breiner, and in what manner Mr. Breiner may or may not be

using such information with regards to current and future litigation against the City

Mr. Breiner's continued representation of both Chief Kealoha and Franson

Plaintiffs only heightens its concerns.

D.  Breiner Cannot Reasonably Obtain Informed Consent from Chief
    Kealoha Because Mr. Breiner Representing Kealoha in the Criminal
    Case Would Likely Constitute Ineffective Assistance of Counsel

If Mr. Breiner were to represent Chief Kealoha in the criminal case, such

would likely constitute ineffective assistance of counsel.  There is a right to be

represented by counsel free of conflicts of interest that inheres in the right to

counsel guaranteed by the federal constitution and our state constitution.  See Fragiao v. State, 95 Haw. 9, 17, 18 P.3d 871, 879 (2001), as amended (Jan. 16, 2001) (citations omitted).  A criminal defendant will prevail on an ineffective assistance of counsel claim where there exists (1) a relationship giving rise to a conflict of interest . . . between defense counsel and his/her clients; and (2) either the relationship adversely affected defense counsel's performance, or the client did not consent to the relationship.  See State v. Mark, 123 Haw. 205, 241, 231 P.3d 478, 514 (2010) (citations omitted).

Since Mr. Breiner's assistance to Chief Kealoha in the criminal case would likely be deemed ineffective due to the conflict, lack of informed consent, and the possibility of an adverse effect on counsel's performance, a disinterested reasonable attorney could not conclude that Mr. Breiner could provide competent and diligent representation to both Chief Kealoha in the criminal case and Franson Plaintiffs in the instant case.

IV.   Events that Have Occurred Since Judge Gillmor's Order to Show Cause Have Not "Cured" Mr. Breiner's Conflict

On August 8, 2016, at a hearing on a Motion for Summary Judgment, and subsequent to the Court's issuance of the Order to Show Cause before Judge Gillmor in the Kaahu lawsuit, Mr. Breiner stated that the plaintiffs in the Kaahu lawsuit would be willing to dismiss out Chief Kealoha in his individual capacity, but not in his official capacity, if Mr. Breiner were allowed to continue to represent

plaintiffs in that case.  <u>See</u> Declaration of Curtis E. Sherwood, ¶16.  The Court

deemed this to be insufficient to cure the conflict, and in fact appeared to suggest

that dismissal of Chief Kealoha from the case in his individual and official

capacities would also be insufficient to cure the conflict of interest.  <u>See</u> Exhibit

"K," p. 6, lns. 7-17.

Subsequent to Judge Gillmor's Order to Show Cause in <u>Kaahu</u>, and after

which time Judge Gillmor issued a stay of the proceedings in the <u>Kaahu</u> case, Mr.

Breiner wrote to COR, with copies sent to Judge Gillmor and Kevin Sumida ("Mr.

Sumida"), Chief Kealoha's attorney in <u>Kealoha et al. v. Charles Totto et al.</u>, Civ.

No. 16-1-1166-6 ("Totto lawsuit"), conveying an offer to dismiss Chief Kealoha

from the <u>Kaahu</u> case with prejudice.  <u>See</u> Declaration of Curtis E. Sherwood, ¶18.

COR conveyed the offer to Chief Kealoha, through Mr. Sumida and the offer was

subsequently accepted.  However, a dismissal has not yet been filed.  <u>See</u>

Declaration of Curtis E. Sherwood, ¶19.  On August 18, 2016, Franson Plaintiffs,

through Mr. Breiner, filed a First Amended Complaint, which omitted Chief

Kealoha as a defendant, and omitted all claims against Chief Kealoha, and all

references to him.  <u>See</u> ECF No. 39.

Mr. Breiner's attempts to belatedly "cure" non-waivable concurrent conflicts

of interest are unavailing, and the City is unaware of any authority that would

allow him to absolve himself of a conflict he created by later dropping claims,

defendants, or clients.  As noted above, the duty of loyalty Mr. Breiner owes to

Franson Plaintiffs has been compromised, and Mr. Breiner's attempts to

retroactively cure conflicts that existed <u>at the outset</u> of Mr. Breiner's representation

of Chief Kealoha does not change this.  Mr. Breiner's loyalties remain divided

regardless of the claims, defendants, and/or parties that he attempts to dispose of.

While the "hot potato" rule deals with attempts by an attorney to cure a conflict of

interest by choosing one client over another, the City finds the rule persuasive in

the instant situation.  The rule provides that withdrawing from representation of

one client is not sufficient to cure the conflict.  <u>See</u> <u>White v. Experian Information</u>

<u>Solutions</u>, 993 F. Supp.2d 1154, 1163 (2014). The rule is "based upon the notion

that a lawyer should not be allowed to profit from a conflict of his own making."

<u>See</u> <u>Flying J. Inc. v. TA Operating Corp.</u>, 2008 WL 648545 (D. Utah March. 10,

2008).

Furthermore, because Mr. Breiner's non-waivable conflict was apparent or

should have been apparent when he undertook representation of Chief Kealoha in

the criminal case, the plain language of HRPC 1.7 suggests that he simply should

not have undertaken representation of Chief Kealoha in the criminal case, and any

subsequent attempts to cure the conflict of interest should be unavailing.  <u>See</u>

HRPC Rule 1.7(b); <u>In re Greco</u>, 46 B.R. 280, 280 (Bankr. D. Haw. 1984) ("An

attorney should not place himself in a position where he may be required to choose

between conflicting duties.") (citations omitted); <u>Christian v. Waialua Agric. Co.</u>, 30 Haw. 533 (1928) (An attorney may not, "whether it is in the same case or not, []assume a position hostile to his client and one inimical to the very interests he was engaged to protect unless he is expressly authorized to do so; and it makes no difference in this respect whether or not the relation itself has been terminated, for the obligation of fidelity and loyalty still continues.") (citation omitted); <u>In re Pioneer Mill Co.</u>, 33 Haw. 305, 309 (Hawaii 1935) ("Courts cannot be too rigorous in their requirement that members of the bar abstain from placing themselves in a position where they would be suspected of professional duplicity."); <u>Truck Insurance Exchange v. Fireman's Fund Ins. Co.</u>, 6 Cal. App. 4th 1050, 1057, 8 Cal. Rptr. 2d 228 (1992) (motion to disqualify counsel affirmed because firm knowingly created the conflict and could not avoid the automatic disqualification rule applicable to concurrent representation by withdrawing from representation of the less favored client).

Given the recent events summarized above, the City has a legitimate stake in disqualifying Mr. Breiner.  Chief Kealoha has a great deal of institutional knowledge and confidential information relevant to the City's defense in civil cases that could easily be shared with Mr. Breiner, and used by Mr. Breiner in civil cases against the City.  It is important to note that Chief Kealoha has refused to waive the conflict of interest that he and his wife created by filing the lawsuit

<u>Kealoha et al. v. Charles Totto et al.</u>, Civ. No. 16-1-1166-6 ("Totto lawsuit"), and has refused to allow the City to represent him in any civil matter.  <u>See</u> Declaration of Curtis E. Sherwood, at ¶¶3, 4.  Chief Kealoha's refusal to waive the conflict of interest in COR representing him that his filing of the Totto lawsuit created further supports the City's position that the City's interests are not properly safeguarded with respect to Mr. Breiner's representation of plaintiffs in multiple civil cases. Chief Kealoha, as Chief of Police, is <u>not</u> an ordinary defendant.  A plaintiff suing Kealoha in his "official capacity" is the same as a plaintiff suing the City—<u>see</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166-67 n.14 (1985); <u>Monell v. Dep't of Soc.</u> <u>Servs.</u>, 436 U.S. 658, 690 n.55 (1978); <u>Wong v. City & Cnty. of Honolulu</u>, 333 F. Supp.2d 942, 947 (D. Hawaii 2004)—and the City has not consented to Mr. Breiner's representation of plaintiffs in the civil cases he has against the City, including the instant case.

//

//

//

//

//

//

//

V.   <u>Conclusion</u>

Based on the foregoing arguments, the City respectfully asks that Mr.

Breiner be disqualified from the instant case.

DATED:  Honolulu, Hawaiʻi, August 27, 2016.

DONNA Y. L. LEONG
Corporation Counsel

By:  <u>/s/ Curtis E. Sherwood</u>
CURTIS E. SHERWOOD
NICOLETTE WINTER
Deputies Corporation Counsel

Attorneys for Defendants
CITY AND COUNTY OF HONOLULU