IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| FRANCISCO FRANSON and JORDON TOPINIO,<br><br>                 Plaintiffs,<br><br>       vs.<br><br>CITY AND COUNTY OF HONOLULU; VINCENT MORRE; NELSON TAMAYORI; and JOSEPH BECERA,<br><br>                 Defendants. | CIVIL NO. 16-00096 DKW-KSC<br><br>**ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISQUALIFY ATTORNEY MYLES BREINER** |

**ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S
MOTION TO DISQUALIFY ATTORNEY MYLES BREINER**

**INTRODUCTION**

Plaintiffs Francisco Franson and Jordon Topinio were assaulted by on-duty

Honolulu Police Department ("HPD") Officers and claim that the assault, a

post-assault cover-up, and unspecified HPD policies were unlawful.   Through their

attorney, Myles Breiner, Esq., Plaintiffs filed civil claims against the three HPD

Officers, the City and County of Honolulu ("City"), and former HPD Chief Louis

Kealoha, for violations of state and federal law.   Mr. Breiner currently represents Kealoha in an unrelated matter.

Following dismissal of the claims against Kealoha with leave to amend – and in the midst of responding to an Order to Show Cause directed at Mr. Breiner's concurrent representation of Kealoha issued by another federal district judge in an unrelated matter pending in this court – Plaintiffs filed a First Amended Complaint that omitted all claims against Kealoha.   The City now seeks to disqualify Mr. Breiner from further representation of Plaintiffs in this matter.

Based upon the Court's consideration of Plaintiffs' right to counsel of their choice, the need to maintain ethical standards of professional responsibility, and the unique circumstances of this case, the City's Motion to Disqualify is GRANTED. Mr. Breiner's concurrent representation of Plaintiffs in the instant matter and Kealoha in an unrelated matter presents a non-waivable conflict of interest within the meaning of Hawaii Rule of Professional Responsibility 1.7, disqualifying Mr. Breiner from further representation of Plaintiffs in this civil action.

## BACKGROUND

### I.   Plaintiffs' Original Complaint

On September 5, 2014, on-duty HPD Officer Vincent Morre assaulted, allegedly without cause, Franson and Topinio in a Honolulu game room in the presence of HPD Officers Nelson Tamayori and Joseph Becera.   On March 6, 2016,

2

Plaintiffs filed suit against the City, the Defendant HPD Officers in their individual capacities (Complaint ¶¶ 6-8), and then-Chief Kealoha in both his official and individual capacities (Complaint ¶¶ 9-10, 41).   Mr. Breiner signed the Complaint. Dkt. No. 1 at 15.

Plaintiffs more specifically allege that Morre assaulted them, without provocation, and that Tamayori and Becera witnessed the assault, but failed or refused to intervene.   Complaint ¶ 19.   According to Plaintiffs, Morre, Tamayori, and Becera agreed to purposely omit the assault from their subsequent reports of the incident in an attempt to conceal it.   Plaintiffs allege that all three HPD Officers were members of the HPD Crime Reduction Unit ("CRU"), *see* Complaint ¶ 12, and aver as follows with respect to the City and Kealoha's liability:

> 10.   Defendant Kealoha is responsible for the instruction, training, and supervision of the Honolulu Police Department's officers and/or members.
>
> * * * *
>
> 23.   Plaintiffs are informed and believe and do thereupon allege that the Honolulu Police Department has a custom, policy, practice, and/or usage of condoning and/or ratifying the use of excessive force and/or conditions amounting to severe punishment by Honolulu Police Department officers, including but not limited to officers with the Honolulu Police Department Crime Reduction Unit.
>
> * * * *

3

33.   As the Chief of Police, Defendant Kealoha's failure to train, supervise, and/or discipline Honolulu Police Department members that use excessive force and/or expose citizens and/or pretrial detainees to conditions amounting to punishment demonstrates that he personally implemented, maintained, enforced, and/or allowed the continued use of excessive force and/or exposure of citizens and/or pretrial detainees to conditions amounting to severe punishment, acted with reckless and callous indifference, and knew of and/or acquiesced to such unconstitutional conduct.

34.   Defendant Kealoha's supervision, training, implementation, maintenance, enforcement, acquiescence, and/or allowance of the continued operation of the use of excessive force or the exposure of citizens and/or pretrial detainees to conditions amounting to severe punishment amounts to deliberate indifference to the rights of persons who are victims of excessive police force and/or suffer conditions amounting to punishment because the custom, policy, and/or practice is obviously deficient, likely to cause the violation of citizens' constitutional rights, and closely related to Plaintiffs' injuries.

35.   Plaintiffs are informed and believe and thereupon allege that by the aforementioned acts and/or omissions Defendants, without any probable, sufficient, just, or reasonable cause, subjected Plaintiffs to illegal and unreasonable searches and seizures and/or denied Plaintiffs due process of law in violation of rights guaranteed to them by the Fourth and Fourteenth Amendments of the United States Constitution and the Constitution and laws of the State of Hawaii and 42 U.S.C. §1983, inter alia.

* * * *

4

37.     Plaintiffs are informed and believe and thereupon allege that Defendants Kealoha and City and County of Honolulu negligently failed and refused to properly adopt and/or enforce policies, train, supervise, and/or discipline the Defendant Officers when they acted outside of the scope of their employment to improperly and illegally assault Plaintiffs and expose them to conditions amounting to severe punishment.

38.     As a direct and proximate cause thereof, Plaintiffs sustained severe injuries and damages in an amount to be proved at trial.

39.     Defendants Kealoha and City and County of Honolulu should have been aware of and taken appropriate action, including but not limited to train and/or supervise Defendant Officers and/or other officers with the Honolulu Police Department Crime Reduction Unit who have been involved in prior incidents in which they were accused of using excessive force.

40.     Defendants Kealoha and City and County of Honolulu failed in supervising, training, hiring and/or failing to discipline the Defendant Officers because Defendants Kealoha and City and County of Honolulu knew or should have known about the necessity and opportunity to exercise control and to curtail the continued operation and use of excessive and/or unnecessary use of force and the exposure of citizens and/or pretrial detainees to conditions amounting to sever[e] punishment.

41.     Defendant Kealoha acted with malice.

Complaint (Dkt. No. 1).

The Complaint alleged the following causes of action: (1) a Section 1983

claim against the City and Kealoha based upon excessive use of force, seizure, and

5

severe punishment in violation of the Fourth and Fourteenth Amendments, and the

Constitution and laws of the State of Hawaii (Count I); (2) a negligent training

and/or supervision claim against the City and Kealoha (Count II); (3) an assault and

battery claim against Morre (Count III); (4) a negligence claim against Defendant

HPD Officers based upon conduct during the execution of an arrest warrant in the

game room (Count IV); (5) a negligent infliction of emotional distress ("NIED")

claim against all Defendants (Count V); (6) an intentional infliction of emotional

distress claim ("IIED") claim against Defendant HPD Officers (Count VI); (7) a

*respondeat superior* claim against the City based upon the tortious conduct of Morre

occurring within the scope of his employment (Count VII); (8) a civil conspiracy

claim against Defendant HPD Officers (Count VIII); and (9) a claim for punitive

damages (Count IX).

## II.     The City's Motion To Dismiss

On April 19, 2016, the City, through its Corporation Counsel, moved to

dismiss all claims in Plaintiffs' Complaint alleged against itself and Kealoha, in both

his official and individual capacities.   Dkt. No. 7.   On April 28, 2016, Kealoha,

also through Corporation Counsel, joined in the City's Motion to Dismiss. Dkt. No.

13.

The Motion to Dismiss argued, in part, that the Complaint failed to allege that

Kealoha was personally involved in any constitutional violation, that he set in

motion any series of acts by others that caused constitutional injury, or that a

constitutionally deficient policy was the moving force behind any harm to Plaintiffs.

*See* City's Motion to Dismiss at 20-21.   Plaintiffs filed their opposition to the City's

Motion to Dismiss on June 9, 2016.   Dkt. No. 23.   Plaintiffs' opposition

highlighted Kealoha's individual liability under Section 1983 and the City's

potential liability for his conduct as follows:

> Plaintiffs further contend that the allegations against Chief Louis
> Kealoha are sufficient to satisfy the "final policy-making
> authority" pleading requirement of § 1983 liability under <u>Monell</u>
> and <u>Gillette</u>.   The Complaint clearly pleads that the
> constitutional tort was committed by the Police Chief.   (*See
> also*, <u>Gillette</u>, at 1346.   Allegations against the Chief of Police
> satisfy this requirement.   (*See*, Complaint ¶¶ 9, 10, 33, 34, 37,
> 39, and 40).   The policy and practice of deputizing the CRU,
> and ignore [sic] the hundreds of complaints of violence over the
> years is a policy which stops with the Police Chief.   He alone
> could have changed this.
>
>                    * * * *
>
> And the § 1983 allegations are plead against the Chief of Police
> and the three individual officers are plead [sic] personally.
> (*See*, Complaint ¶ 9, 10, 33 & 34).

Plaintiffs' Opp. to City Motion to Dismiss at 7, 11 (footnote omitted).

With respect to dismissal of their claims for damages against Kealoha,

Plaintiffs argued that:

> the Motion again seeks to avoid punitive damages.   Such
> punitive damages are clearly available against the individual
> Defendants.   The Complaint only pleads for punitive damages

7

> against "Defendant officers."   (Complaint at p.14).   Plaintiffs
> submit that whether punitive damages apply to Chief Kealoha
> are [sic] a question of fact, which brings us full circle to "the
> final policy maker" discussion.   (Supra p.7)
>
> . . . The Motion's final objection is that allegations against Chief
> Kealoha are not specific enough.   Again, Defendants are
> applying a "plausibility" test.   Under FRCP 12(b)6, the
> Complaint must only name the "final policy maker" is named,
> [sic] identify the policy in question -- the continued existence
> and supervision (or lack thereof of the "CRU" — so that the
> Defendants are afforded enough notice to prepare their defense.

Plaintiffs' Opp. to City Motion to Dismiss at 12.   Plaintiffs' opposition was signed

by Mr. Breiner and supported by his Declaration.   Plaintiffs' Opp. to City Motion to

Dismiss at 13 (Dkt. No. 23).

The Court held a hearing on the Motion to Dismiss on July 1, 2016.   Dkt. No.

28.   Mr. Breiner appeared at the hearing on behalf of Plaintiffs.   On July 26, 2016,

the Court issued an Order Granting In Part And Denying In Part Defendant City And

County Of Honolulu's Motion to Dismiss Complaint.   Dkt. No. 32 (7/26/2016

Order).   The Court concluded that Plaintiffs' official-capacity claims against

Kealoha duplicated the claims asserted against the City and, accordingly, dismissed

them without leave to amend.   7/26/2016 Order at 23-24.   With respect to the

individual-capacity claims against Kealoha, the Court found that the Complaint

alleged no facts supporting Section 1983 liability and dismissed Count I against

Kealoha with leave to amend.   7/26/2016 Order at 17, 24.   The Court also

dismissed with leave to amend the Section 1983 municipal liability claim against the

City based on Plaintiffs' allegations that Kealoha, an official with final

policy-making authority, ratified the unconstitutional action of a subordinate.

7/26/2016 Order at 15-16.   The Court granted Plaintiffs leave to file a First

Amended Complaint by no later than August 22, 2016.

**III.   <u>Plaintiffs' First Amended Complaint</u>**

Plaintiffs filed their First Amended Complaint on August 18, 2016 and, this

time, did not name Kealoha as a defendant in any capacity.   Dkt. No. 39.   The First

Amended Complaint again alleged Section 1983 municipal liability claims against

the City (Counts I and II), with similar factual averments regarding City policies, but

omitted any reference to Kealoha's role in the alleged constitutional violations.   For

example, Plaintiffs alleged, in part:

> 43.   Defendant Officers used unnecessary and excessive force
> against, seized and/or exposed Plaintiffs to conditions that
> amounted to severe punishment.   This use of excessive
> force is a result of a policy and practice of maintaining the
> Crime Reduction Unit ("CRU"), which allows
> free-roaming plain-clothed officers to violate individual
> rights, roam the city without authorized direction of
> assignment or documentation of purpose and method.
>
> 44.   The policy of condoning, ratifying, and/or failing to
> prevent the excessive and/or unnecessary use of force
> and/or exposing citizens and/or pretrial detainees to
> conditions that amount to severe punishment by Honolulu
> Police Officers is a constitutionally deficient custom and
> policy that violated the constitutional rights of persons

9

such as Plaintiffs, and there is a direct causal connection between the custom, policy, practice, and/or usage and these constitutional deprivations.

* * * *

52.     Plaintiffs are informed and believe and thereupon allege that Defendant City and County of Honolulu routinely and negligently failed to train, supervised, and/or discipline the Defendant Officers when they acted outside of the scope of their employment, allowing and even encouraging Defendant Officers to improperly and illegally assault Plaintiffs and expose them to conditions amounting to severe punishment.

* * * *

55.     Defendant City and County of Honolulu's supervision, training, and oversight of its officers on this unit CRU was negligent, if not entirely absent.   There is no accountability for the use of time, direction of the commitment of manpower, or recording of daily activities. Work for the CRU does not involve any identifiable goals at the onset, specific recording of methodology or problems encountered, progress reporting, and legitimate target success achievements.

* * * *

69.     Defendant City and County of Honolulu has long been aware that the supervisors were instructing otherwise good officers to file false police reports, lie to investigators and perjure themselves before the courts. That this has created a policy and/or practice which exposes citizens and/or pretrial detainees to conditions amounting to severe punishment amounts to deliberate indifference to the rights of those persons.

* * * *

71.    Defendants City and County of Honolulu should have been aware and had a duty to take appropriate action involving all officers with the Honolulu Police Department who have been involved in incidents where they are accused of using excessive force.

72.    Defendant City and County of Honolulu deliberately failed to supervise, train and discipline the Defendant Officers because Defendant City and County of Honolulu condones the policy and practice of targeting those who cannot credibly report misconduct or patronize game rooms.

73.    Defendant City and County of Honolulu is responsible for the instruction, training, and supervision of the Honolulu Police Department's officers.

First Amended Complaint.

## IV.   **Mr. Breiner's Concurrent Representation Of Kealoha And Plaintiffs**

On August 27, 2016, the City filed the instant Motion to Disqualify (Dkt. No. 44) based on Mr. Breiner's concurrent representation of Plaintiffs in the instant matter and Kealoha in an unrelated matter.   Although the record is not entirely clear on the timing or scope of his representation of Kealoha, there is no dispute for purposes of the instant Motion that Mr. Breiner currently represents both Plaintiffs and Kealoha and has since at least May 2016.

In support of its Motion, the City submitted several media interviews from May through August 2016 in which Mr. Breiner held himself out as Kealoha's attorney, commenting on a possible federal investigation and indictment of Kealoha

11

and others.   *See* City Motion to Disqualify, Declaration of Counsel, Exs. A, B, C, and F (Dkt. No. 44).   The City also provided a May 4, 2016 letter from Mr. Breiner to the Office of the United States Attorney, Southern District of California, with the subject line "Louis and Katherine Kealoha," which states in pertinent part:

> Please be advised that my office represents Honolulu Police Department Chief Louis Kealoha and Katherine Kealoha. Please direct any and all communication and/or correspondence regarding Chief Kealoha or Ms. Kealoha to my office.

Second Declaration of Counsel, Ex. L (Dkt. No. 56).

Kealoha describes his attorney-client relationship with Mr. Breiner as follows:

> 4.      I have agreed to have Mr. Breiner represent me and my wife on a limited basis for certain matters involving a supposed federal grand jury investigation, about which much information has been reported by the press as leaks from the grand jury, but which the federal government will not confirm or deny.

> 5.      I have not spoken to Mr. Breiner about any matter other than the limited issues pertaining [to] what I or my wife may know about the federal grand jury as reported by the press or by others.   Except as noted below, those matters do not in any way involve departmental matters or procedures, any pending lawsuits filed by Mr. Breiner's office, any other pending civil matters.   The only exception is a discussion with Mr. Breiner about the nature of the civil cases brought against HPD and myself as Chief, and the relief sought, and whether I would waive any conflict that Mr. Breiner may have as the attorney for the civil claimants and as my attorney for the limited purposes noted above.   I have signed a written waiver.

6.      I have not communicated with Mr. Breiner about any
departmental matters, or any other matter except the
limited issues relating to the federal grand jury.   It was
made clear to Mr. Breiner, and he agreed, that we would
not discuss any matter other than the limited matters for
which he has agreed to represent us, knowing that he
represents parties in other matters, both criminal and civil,
which are adverse to HPD, the City and/or myself as
Chief.

9/19/16 Kealoha Decl. (Dkt. No. 57-2).

In response to the City's Motion, on October 12, 2016, Plaintiffs submitted a

Declaration of Attorney Myles Breiner setting forth the following chronology of his

representation of both Kealoha, and his wife, Katherine Kealoha:

4.      Deputy Prosecuting Attorney [Katherine] Kealoha
approached me about representing her and her husband, in
the event that there is an indictment in the federal Grand
Jury.   In the midst of these negotiations, I contacted the
State Bar to discuss the potential conflicts.   I informed
Mrs. Kealoha of my two cases where the Chief of Police
was a named Defendant.   The Kealohas had previously
retained Attorney Kevin Sumida to represent them in
Kealoha vs. Totto, Civ. No. 16-1-001166 (1st Cir. HI
2016).   DPA Kealoha and I discussed using Kevin
Sumida in the event there was anything I could not cover
with Chief Kealoha.

5.      I consulted the Hawaii State Bar to see if I could represent
the Kealohas.   In a conversation with Staff Attorney
Bruce Kim at the Office of Disciplinary Counsel, Bar
Association for the State of Hawaii, ("ODC") we
discussed the potential for conflict, simply because Chief
Louis Kealoha was a named Defendant in the two PI
cases.   Attorney Kim referred me to HRPC Rule 1.7 and I

13

asked questions about the application of the Rule to the
relationship between my PI cases.   We concluded that the
clients should be consulted, and if they so chose to waive
this conflict in an informed manner, they could do so in
accordance with Hawaii Rules of Professional Conduct
("HRPC") Rule 1.7.

6.     [The City's] motion makes numerous references that I
       denied representing the Kealohas.   This is complete
       nonsense.   In fact when the question first appeared to be
       an issue, Attorney Breiner filed a "Notice of Appearance"
       in the Kealoha's matter, September 20, 2016.

7.     I took the prescribed proactive efforts to consult with each
       of his clients, and secured their informed consent in
       writing before agreeing to represent the Kealohas.
       Before August 7, 2016 when Judge Gillmor held the Order
       to Show Cause hearing, I had on file with the Court
       "Memorandum in Response to OSC Franson, [ECF No.
       43], containing written waivers for Franson, Topinio, Mr.
       and Mrs. Kaʻahu and Chief & DPA Kealoha.

Declaration of Attorney Myles Breiner ("10/12/16 Breiner Decl.") (Dkt. No. 57-1).[1]

In response to an August 1, 2016 Order to Show Cause issued by Judge

Gillmor in *Kaʻahu v. Randall*, Civ. No. 14-00266 – another case pending in this

district in which Mr. Breiner represents plaintiffs in a civil rights action against the

City, HPD, and Kealoha – Mr. Breiner submitted a Memorandum of Law Re:

---

[1]Although the Declaration indicates that it was executed on September 1, 2016, certain events set
forth in the Declaration post-date September 1, 2016.   *See* 10/12/16 Breiner Decl. ¶ 6.   The
Declaration was filed with the Court on October 12, 2016.

Professional Rules of Conduct Rule 1.7 and Attorney Myles S. Breiner's

Declaration (Dkt. No. 43).[2]   The August 2016 Memorandum states that:

> Some time in May of 2016, Attorney Breiner began talks with
> . . . Chief Kealoha, in the event that there are indictments filed
> against them.   Those indictments have not been secured as of
> this date.   There has, however, been some initial pre-indictment
> activity, and several press statements where Attorney Breiner
> spoke on behalf of [Chief and Mrs. Kealoha].
>
> * * * *
>
> Attorney Breiner plans to represent [the Kealohas] only if
> criminal charges are brought by a federal prosecutor, and that
> matter would have nothing to do with []either Franson/Topinio's
> nor [redacted] claims.   And no position Mr. Franson, Mr.
> Topinio or the [redacted] could imaginably have [] overlap[s]
> with the Chief Kealoha's defense.   The anticipated claims being
> investigated against [the Kealohas] are totally unrelated to the
> policies being challenged in Franson and Topinio.
>
> * * * *
>
> The agreement between [the Kealohas] and Attorney Breiner is
> that Attorney Breiner would represent [them] in the event that
> indictments are filed in the Federal District Court, District of
> Hawaii.   To date, no such indictments have been handed down.

Memorandum of Law at 2, 7-8 (Dkt. No. 43).   In his Declaration, attached to the

Memorandum responding to the Order to Show Cause, Mr. Breiner explains that he

obtained waivers from his clients as follows:

---

[2]Mr. Breiner filed his Memorandum of Law Re: Professional Rules of Conduct Rule 1.7 in both
*Ka'ahu* and the instant case.

7.      My office issued a letter pursuant to the Hawaii Rules of Professional Conduct, Rule 1.7, advising Jordon Topinio and Francisco Franson of the potential for a conflict.   A true and correct copy of the letter that was sent to Francisco Franson and Jordan Topinio is attached as "Exhibit C".

8.      After being fully informed of the option to find another attorney and provided with the written option to do so, both Francisco Franson and Jordon Topinio signed the "Waiver of Conflict to Continue Representation."   A true and correct copy is attached hereto as "Exhibit D."

Breiner Decl. (Dkt. No. 43).[3]

The letters sent to Franson and Topinio state that because Mr. Breiner is currently representing the Kealohas, a potential conflict of interest arises under HRPC 1.7.   For example, the July 19, 2016 letter to Franson states, in part:

I do not believe that a conflict of interest presently exists as your matters are separate and independent from the matters in which I am representing the [Kealohas].

I believe I can continue to represent your legal interests without adversely affecting or compromising the attorney-client relationship.   Rest assured, your agreement to waive any potential conflict does not allow me to disclose any information regarding your case to the Kealohas and vice-versa.

If you believe that this potential conflict of interest will not adversely impact my ability to represent you and desire continued representation, please execute the enclosed Waiver of Conflict to Continue Representation.   However, if you believe

---

[3]The conflict letter sent to Franson is dated July 19, 2016 and the letter sent to Topinio is dated June 7, 2016.   *See* Breiner Decl. Exs. C through E (Dkt. No. 43).

that the potential conflict of interest will affect my ability to
represent you or you wish to seek new counsel if my law office
continues to represent the [Kealohas], please execute the
Non-Waiver of Conflict to Discontinue Representation.   Please
return the completed Waiver form to my office.

Breiner Decl. Ex. D (Dkt. No. 43).   The waivers executed by Plaintiffs state:

I, [Francisco Franson/Jordon Topinio], hereby acknowledge that
I have carefully read and understand the foregoing letter.   I am
informed that The Law Office of Myles S. Breiner is currently
representing my interests and those of [the Kealohas].

I further understand and am aware that certain conflicts of
interests may exist by The Law Office of Myles S. Breiner
representing both [the Kealohas] and myself.

I knowingly and freely waive any such conflict as provided for
by HRPC § 1.7, and consent to such concurrent representation by
The Law Office of Myles S. Breiner.

Breiner Decl. Exs. D and E (Dkt. No. 43).   Kealoha also executed a waiver

consenting to Mr. Breiner's continued representation, which provides:

I have carefully read and understand the foregoing letter.[4]   I am
informed that The Law Office of Myles S. Breiner is currently
representing my interests and those of numerous clients involved
in civil and criminal cases that may inherently possess a conflict
of interest.

I knowingly and freely waive any such conflict as provided for
by HRPC § 1.7, and consent to such concurrent representation
by The Law Office of Myles S. Breiner.

--------

[4]The letter referenced in the Kealoha waiver is neither attached to the waiver itself nor the Breiner
Declaration.   *See* Dkt. No. 43.

17

Breiner Decl. Ex. C (Dkt. No. 43).

## DISCUSSION

### I.   Legal Standard

The City moves to disqualify Mr. Breiner pursuant to Hawaiʻi Rule of

Professional Conduct ("HRPC") 1.7, alleging a non-waivable conflict of interest.[5]

> The party seeking disqualification "carries a heavy burden and must satisfy a high standard of proof because of the potential for abuse."   *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000).   A motion for disqualification "should not be decided on the basis of general and conclusory allegations."   *Chuck v. St. Paul Fire & Marine Ins. Co*., 606 P.2d 1320, 1325 (Haw. 1980).   A court's factual findings for disqualification must be "supported by substantial evidence."   *Visa U.S.A. v. First Data Corp*., 241 F. Supp. 2d 1100, 1104 (N.D. Cal. 2003).

*White v. Time Warner Cable*, 2013 WL 772848, at *1 (D. Haw. Feb. 27, 2013).   "In

deciding whether to disqualify an attorney, a district court must balance a client's

right freely to choose his counsel against the need to maintain the highest standards

of the profession."   *GSI Commerce Solutions, Inc. v. Babycenter L.L.C*., 618 F.3d

204, 209 (2d Cir. 2010) (citation omitted).

―――――――――――――――

[5]The City has standing to raise the issue, as does the Court.   *See* HRPC 1.7 cmt. 15 ("Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation.   In litigation, a court may raise the question when there is reason to infer that the lawyer has neglected the responsibility. . .Where the conflict is such that it clearly calls into question the fair or efficient administration of justice, opposing counsel may properly raise the question.").   Plaintiffs acknowledge the Court's authority to address the issue *sua sponte*.   *See* Breiner Decl. ¶ 15 (Dkt. No. 43) ("Of course the Court is free to raise the issue in an abundance of caution; however, it is not a matter that has caused concern for [any] of my clients as evidenced by their signed Waivers.").

Pursuant to Local Rule ("LR") 83.3, "[e]very member of the bar of this court and any attorney permitted to practice in this court pursuant to LR 83.1(d) or (e) shall be governed by and shall observe the standards of professional and ethical conduct required of members of the Hawaii State Bar."   Attorneys who practice in the Hawaii state courts must comply with the Hawaii Rules of Professional Conduct. *See* Rules of the Supreme Court of the State of Hawaii, Rule 2.2; *see also United States v. Gaitan-Ayala,* 2008 WL 1752678, at \*3 (D. Haw. Apr. 17, 2008) ("The Local Rules for the District of Hawaii require attorneys practicing in the district to comply with the Hawaii Rules of Professional Conduct.") (citing LR 83.3).

The governing rule, HRPC 1.7,[6] provides that:

> (a)   Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.   A concurrent conflict of interest exists if:
>
> > (1)   the representation of one client will be directly adverse to another client; or
>
> > (2)   there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former

---

[6]Although Plaintiffs' opposition relies upon HRPC 1.9, which governs conflicts of interest involving a former client, the instant dispute involves a concurrent conflict.   Because Mr. Breiner presently represents both Kealoha and Plaintiffs, this matter falls squarely within the scope of HRPC 1.7.   Indeed, after Mr. Breiner was advised of this governing rule in May 2016 by the Office of Disciplinary Counsel, he advised his current clients of the potential conflict and sought waivers of conflict pursuant to HRPC 1.7.   *See* Breiner Decl. ¶¶ 4-9 (Dkt. No. 43).

client, or a third person, or by a personal interest of the lawyer.

(b)     Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:

(1)     the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2)     the representation is not prohibited by law;

(3)     the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)     each affected client gives consent after consultation, confirmed in writing.

## II.  <u>Analysis</u>

Based upon its review of the record and mindful of the gravity of these proceedings, the Court finds that Mr. Breiner's concurrent representation of Plaintiffs in the instant matter and Kealoha in an unrelated matter presents a non-waivable conflict of interest.   Moreover, even assuming the conflict could be waived, the Court has serious doubts, based on the evidence presented, that each affected client gave valid consent after consultation, as required by the rules.

## A.   A Concurrent Conflict Exists

The Court first identifies the basis of the concurrent conflict.   Under HRPC 1.7(a), a concurrent conflict of interest exists if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client."

Mr. Breiner filed the Complaint on behalf of Plaintiffs on March 6, 2016, alleging claims against Kealoha in his individual and official capacities, and seeking punitive damages.   The City moved to dismiss the claims against Kealoha on April 19, 2016.   By at least May 4, 2016, the date he sent a letter to the Office of the United States Attorney, Mr. Breiner held himself out as Kealoha's attorney.   *See* Second Declaration of Counsel, Ex. L (Dkt. No. 56) ("Please be advised that my office represents Honolulu Police Department Chief Louis Kealoha and Katherine Kealoha.   Please direct any and all communication and/or correspondence regarding Chief Kealoha or Ms. Kealoha to my office.").   A concurrent conflict existed when Mr. Breiner undertook his representation of Kealoha while simultaneously representing Plaintiffs.[7]

---

[7]Indeed, at this point in May 2016, Mr. Breiner himself acknowledged at least a *potential* conflict, reaching out to the ODC for advice.   *See* 10/12/16 Breiner Decl. ¶ 5 (Dkt. No. 57-1).

Plaintiffs and Kealoha were "directly adverse" under HRPC 1.7(a)(1).

Plaintiffs and Kealoha were opposing parties in the same litigation until the claims

against Kealoha were dismissed with leave to amend by the Court's July 26, 2016

Order, and the First Amended Complaint was filed omitting Kealoha as a defendant

on August 18, 2016.   *See* HRPC 1.7 cmt. 6 ("Thus, absent consent, a lawyer may

not act as an advocate in one matter against a person the lawyer represents in some

other matter, even when the matters are wholly unrelated. . .   [A] directly adverse

conflict may arise when a lawyer is required to cross-examine a client who appears

as a witness in a lawsuit involving another client, as when the testimony will be

damaging to the client who is represented in the lawsuit.").

In fact, the conflict remains, notwithstanding Kealoha's dismissal.

Commentary to HRPC 1.7(a)(2) succinctly identifies the problem:

> Even where there is no direct adversity of interest, a conflict of
> interest exists if there is a significant risk that a lawyer's ability
> to consider, recommend, or carry out an appropriate course of
> action for the client will be materially limited as a result of the
> lawyer's other responsibilities or interests.   For example, a
> lawyer asked to represent several individuals seeking to form a
> joint venture is likely to be materially limited in the lawyer's
> ability to recommend or advocate all possible positions that each
> might take because of the lawyer's duty of loyalty to the others.
> The conflict in effect forecloses alternatives that would
> otherwise be available to the client.   The mere possibility of
> subsequent harm does not itself require disclosure and consent.
> The critical questions are the likelihood that a difference in
> interests will arise and, if it does, whether it will materially
> interfere with the lawyer's independent professional judgment in

> considering alternatives or foreclose courses of action that
> reasonably should be pursued on behalf of the client.

HRPC 1.7 cmt. 8.   Such concerns are implicated here.   That is because, as discussed more fully below, Plaintiffs' counsel has already reversed course, first alleging not only direct claims against Kealoha, but those based on intentionality and malice, and, shortly after having the propriety of his representation questioned by Judge Gillmor, eliminating all claims, allegations and mere mention of Kealoha in the currently operative pleading.   Accordingly, there is not only a significant risk that Mr. Breiner's ability to consider, recommend, or carry out an appropriate course of action for Plaintiffs *might* be materially limited as a result of his duty of loyalty to Kealoha.   It appears that potential risk has become reality.

In light of the concurrent conflict of interest, the Court turns to whether Mr. Breiner's conflict was waivable and whether effective consent was obtained.

## B.   <u>The Conflict Is Not Waivable By Consent</u>

HRPC 1.7(b) provides that, notwithstanding the existence of a concurrent conflict of interest, a lawyer may represent a client if:

> (1)   the lawyer reasonably believes that the lawyer will be
> able to provide competent and diligent representation to
> each affected client

> (2)   the representation is not prohibited by law;

(3)     the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4)     each affected client gives consent after consultation, confirmed in writing.

*See also* HRPC 1.7 cmt. 14 ("[A]s indicated in paragraph (b), some conflicts make representation impossible, regardless of a client's willingness to consent.   In such situations, the conflict cannot reasonably be consented to because the lawyer involved cannot reasonably ask the client for consent and cannot provide independent, objective representation even if the client were to consent.").

"The question of whether a perceived conflict of interest can reasonably be consented to is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their consent, after consultation, to representation burdened by a conflict of interest."   HRPC 1.7 cmt. 15.   Based on the record presented to the Court, (1) it is not reasonable to believe that Mr. Breiner can provide competent and diligent representation to both Plaintiffs and Kealoha, and (2) it is not clear that each affected client gave valid consent after consultation, confirmed in writing, as these terms are defined in the HRPC.

1.      **Whether It Is Reasonable To Believe That Mr. Breiner Can Provide Competent And Diligent Representation To Each Affected Client**

The Court begins with the first prong of HRPC 1.7(b)(1) and concludes that it is not reasonable for Mr. Breiner to believe that he could adequately comply with his professional responsibilities to each affected client based on the particular facts and circumstances of this case.

"Under paragraph (b)(1), the representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation."   HRPC 1.7 cmt. 15.[8]   Here, it is not reasonable to conclude that Mr. Breiner could provide such representation to Plaintiffs and Kealoha, upon consideration of their divergent interests in the two matters and his competing duties of loyalty to each.   Notably, Mr. Breiner faces an ethical impasse – he is forced to decide, among other things, whether to make arguments that impugn the credibility and character of Kealoha, whether to assert theories of liability that directly implicate Kealoha, and whether to seek damages, including punitive damages, effectively from his own client, all of which Mr. Breiner once did when the Complaint in this case was filed.

---

[8]"Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."   HRPC 1.1.   Under Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."   HRPC 1.3.

The City argues that Mr. Breiner's divided duty of loyalty to his clients is perhaps best demonstrated by his presentment of arguments on behalf of Plaintiffs that were adverse to Kealoha's interests, but which Mr. Breiner subsequently abandoned after Judge Gillmor issued the Order to Show Cause on August 1, 2016. For example, Plaintiffs' original claims against Kealoha included Section 1983 and negligent supervision claims, allegations of "malice," and a request for punitive damages:

> 10.   Defendant Kealoha is responsible for the instruction, training, and supervision of the Honolulu Police Department's officers and/or members.
>
> * * * *
>
> 33.   As the Chief of Police, Defendant Kealoha's failure to train, supervise, and/or discipline Honolulu Police Department members that use excessive force and/or expose citizens and/or pretrial detainees to conditions amounting to punishment demonstrates that **he personally implemented, maintained, enforced,** and/or allowed the continued use of excessive force and/or exposure of citizens and/or pretrial detainees to conditions amounting to severe punishment, **acted with reckless and callous indifference, and knew of and/or acquiesced to such unconstitutional conduct.**
>
> * * * *
>
> 41.   Defendant **Kealoha acted with malice**.

Complaint (Dkt. No. 1) (emphasis added).   Similarly, in Plaintiffs' June 9, 2016 opposition to the City's Motion to Dismiss – filed with the Court when Mr. Breiner

concurrently represented Plaintiffs and Kealoha – Mr. Breiner described the

allegations against Chief Kealoha this way:

> The Complaint clearly pleads that the constitutional tort was
> committed by the Police Chief.   (*See also*, Gillette, at
> 1346[)]. . . .   The policy and practice of deputizing the CRU,
> and ignore (sic) the hundreds of complaints of violence over the
> years is a policy which stops with the Police Chief.   He alone
> could have changed this.

Plaintiffs' Opp. to City Motion to Dismiss at 7, 11 (footnote omitted).

These allegations and others are absent from Plaintiffs' First Amended

Complaint filed on August 18, 2016, seventeen days after Judge Gillmor questioned

the propriety of Mr. Breiner's concurrent conflict through her Order to Show Cause

in *Ka'ahu*.   The First Amended Complaint omitted assertions that, as the Chief of

Police, Kealoha was the "final policy-maker" who ratified the unconstitutional

conduct of subordinates, and was the only one with the authority to reign in the CRU

officers involved in prior incidents of unconstitutional conduct.   The First

Amended Complaint also removed allegations of recklessness, callous indifference,

and malice by Kealoha.   In fact, there are no references to Kealoha at all in the First

Amended Complaint.

It is difficult, if not impossible, to determine whether the claims against

Kealoha that were abandoned upon the filing of the First Amended Complaint were

worth pursuing, were supported by the facts, were omitted for strategic reasons, or,

as argued by the City, were omitted because of Mr. Breiner's divided loyalty.   What is clear is that this presents a situation in which clients "reasonably may fear that the lawyer will pursue [their] case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client."   HRPC 1.7 cmt. 6.   The particular course of this litigation raises serious questions as to whether Mr. Breiner's conflict of interest not only *could* materially interfere with his independent professional judgment in considering alternative courses of action, but already has.   *See* HRPC 1.7 cmt. 8.

        The potential also remains that Kealoha could be called as a witness in the instant case, and that his institutional knowledge of HPD's policies and procedures – including confidential information relating to his management of HPD, his role with respect to the oversight of CRU units, or matters relevant to the federal grand jury investigation – will further complicate Mr. Breiner's duties to all affected clients. *See, e.g., United States v. Gaitan-Ayala*, 2008 WL 1752678, at \*5 (D. Haw. Apr. 17, 2008) ("Based on his ethical duties to Ciufo, Breiner may severely limit or restrict the scope of his cross-examination, or may refrain from pursuing defense strategies or tactics otherwise available to non-conflicted counsel.   These concerns are further amplified by the fact that Breiner's continuing duty of confidentiality prevents the disclosure of not only confidential communications, but also 'all information relating to the representation, whatever its source.'   HRPC 1.6(a); *id.* cmt. ¶ 5.

28

Under these circumstances, a 'disinterested' attorney would not conclude that Gaitan-Ayala should agree to Breiner's representation.   HRPC 1.7 cmt. ¶ 5.").   For these additional reasons, it is not reasonable for Mr. Breiner to believe that he would be able to provide competent and diligent representation to all concerned under the circumstances presented here.

Mr. Breiner's ability to consider, recommend, or carry out an appropriate course of action for Plaintiffs is materially limited by his duty of loyalty to Kealoha. Where, as here, "a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent."   HRPC 1.7 cmt. 15.   Accordingly, on these facts, Mr. Breiner's request for a client conflict waiver violates HRPC 1.7.

**2.    Whether Each Affected Client Gave Consent After Consultation, Confirmed In Writing**

Even assuming that the conditions of HRPC 1.7(b)(1) were met, it is not evident that Mr. Breiner's client waivers were obtained after appropriate consultation with each affected client, as required by HRPC 1.7(b)(4).

As a preliminary matter, the timeline in which consent was obtained, as described by Mr. Breiner, does not add up.   Although Mr. Breiner states that he took "proactive efforts to consult with each of his clients, and secure their informed

29

consent in writing before agreeing to represent the Kealohas," 10/12/16 Breiner

Decl. ¶ 7, neither Plaintiff consented prior to May 4, 2016, when Mr. Breiner

informed the Office of the United States Attorney that he represented the Kealohas.

In fact, Mr. Breiner did not even seek consent in writing until June 7, 2016 (Topinio)

and July 19, 2016 (Franson), respectively. *See* Breiner Decl. Exs. D and E (Dkt.

No. 43). Topinio's waiver is dated June 14, 2016 and Franson's is dated July 22,

2016. *Id.*

Further, under the rules, "[v]alid client consent requires that each affected

client be aware of the relevant circumstances and of the material and reasonably

foreseeable ways that the conflict could have adverse effects on the interests of that

client." HRPC 1.7 cmt. 18. Disclosure "must include the implications of the

common representation, including possible effects on loyalty, confidentiality, and

the client-lawyer privilege and the advantages and risks involved." HRPC 1.7 cmt.

18. More generally, under HRPC 1.0(c), "consult" or "consultation" "denotes

communication of information reasonably sufficient to permit the client to

appreciate the significance of the matter in question." The commentary to the rule

provides additional guidance:

> The lawyer must make reasonable efforts to ensure that the client
> or other person possesses information reasonably adequate to
> make an informed decision. Ordinarily, this will require
> communication that includes a disclosure of the facts and
> circumstances giving rise to the situation, any explanation

> reasonably necessary to inform the client or other person of the
> material advantages and disadvantages of the proposed course of
> conduct, and a discussion of the client's or other person's options
> and alternatives. . . .   A lawyer need not inform a client or other
> person of facts or implications already known to the client or
> other person; nevertheless, a lawyer who does not personally
> inform the client or other person assumes the risk that the client
> or other person is inadequately informed as to all relevant factors
> and the consent may therefore be invalid.

HRPC 1.0 cmt. 2.

Mr. Breiner's disclosure letters do not even approximate these requirements. The letters conclusorily state: "I do not believe that a conflict of interest presently exists as your matters are separate and independent from the matters in which I am representing the [Kealohas].   I believe I can continue to represent your legal interests without adversely affecting or compromising the attorney-client relationship."   Breiner Decl. Ex. D (Dkt. No. 43).   There is no discussion of the potential adverse effects on the client, no material discussion of confidentiality or the attorney-client privilege, and no discussion of the risks of continuing with his representation.   As a result, whatever consent was provided was not meaningful or informed within the requirements of HRPC 1.7(b)(4).

### C.   <u>Mr. Breiner Is Disqualified From Representing Plaintiffs</u>

The Court is mindful of the severe nature of disqualification.   *See Reading Int'l, Inc. v. Malulani Grp*., Ltd., 814 F.3d 1046, 1053 (9th Cir. 2016) (Noting the "drastic nature of disqualification, . . .[t]his court has warned that a 'motion to

31

disqualify a law firm can be a powerful litigation tactic to deny an opposing party's counsel of choice.'") (quoting *In re Cty. of L.A.*, 223 F.3d 990, 995 (9th Cir. 2000)); *see also Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985) (motions to disqualify are "subjected to particularly strict judicial scrutiny").

Nonetheless, the Court's "paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar." *State Comp. Ins. Fund v. Drobot*, 2016 WL 3524330, at *5 (C.D. Cal. June 24, 2016) (internal citation and quotation marks omitted). The Court has a responsibility to ensure that the matters before it "are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *United States v. Gaitan-Ayala*, 2008 WL 1752678, at *5 (D. Haw. Apr. 17, 2008) (quoting *Wheat v. United States*, 486 U.S. 153, 160 (1988)); *see also United States v. Pflueger*, 2011 WL 6140898, at *5 (D. Haw. Dec. 8, 2011) ("Nevertheless, even in cases where a party waives an actual or potential conflict, district courts have 'substantial latitude in refusing waivers of conflicts of interest' in favor of disqualification in cases 'where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.'") (quoting *Wheat*, 486 U.S. at 163).

32

For the reasons set forth above, Mr. Breiner's ability to represent Plaintiffs is materially limited as a result of his duty of loyalty to Kealoha.   Mr. Breiner's divided loyalties present irreconcilable conflicts, and threaten a quagmire of additional conflicts, that prevent him from reasonably believing he could provide competent and diligent representation to each client under the particular circumstances of this case and prohibit him from, in effect, seeking client permission to continue.   Accordingly, despite the drastic nature of disqualification, the Court finds that HRPC 1.7 requires the disqualification of Mr. Breiner from further involvement in this case.

## CONCLUSION

For the foregoing reasons, Defendant City and County of Honolulu's Motion To Disqualify Attorney Myles Breiner, together with the joinders therein (*see* Dkt. Nos. 46 and 51), are GRANTED.

IT IS SO ORDERED.

DATED: January 25, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

*Franson, et al. v City & County of Honolulu et al.*, Civ. No. 16-00096 DKW-KSC; **ORDER GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO DISQUALIFYATTORNEY MYLES BREINER**